Maurice L. BENNER and Alta J. Benner

v.

Luther SHERMAN.

Supreme Judicial Court of Maine.

March 31, 1977.

Richard A. McKittrick, Camden, Charles A. Peirce, Palermo, for plaintiffs.

Eaton, Glass & Marsano, by Francis C. Marsano, Belfast, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

By their complaint the plaintiffs sought a declaration of their right to the use, as a means of access to their property, of a certain way across the property of the defendant. Additionally, the plaintiffs sought to have the defendant permanently enjoined from interfering with their use of this right of access. Following a jury waived trial a Justice of the Superior Court determined that the plaintiffs had estab-

* WEATHERBEE, J., sat at argument and participated in consultation but died prior to preparation of opinion.

lished their right to the use of this access road, premising his opinion solely on the acquisition of that right by prescriptive use, but declined to issue an injunction.

The defendant seasonably appealed, contending that the judgment in the Superior Court was against "the law, the evidence, and the weight of the evidence." Alternatively, he contends the scope of the easement as granted was overly extensive. We disagree with the appellant's basic argument but we do agree that the potential scope of the easement granted exceeded the use which the evidence would support as underpinning the acquisition of the prescriptive right. We, therefore, deny the appeal but remand the case to the Superior Court for an appropriate amendment to the judgment.

Lake St. George is located in the town of Liberty in Waldo County. Protruding into this lake in an easterly direction is an extensive peninsula which is commonly known as "the Neck," on which plaintiffs and defendant own adjoining land. On the westerly boundary of the defendant's property is a public highway known as Marshall Shore Road. The defendant's property (the Dunton Farm) is also bounded on its southerly side by the shore of the lake. Approximately twenty-five hundred feet easterly of the Marshall Shore Road is the dividing line between the defendant's and the plaintiffs' property (the Brown Farm). This dividing line is a straight line proceeding northerly from the shore of Lake St. George to the plaintiffs' northerly bound. The plaintiffs' land is bounded on its northerly and easterly side by land of others and on the south by the lake and contains thirty acres, with a lake frontage of approximately two thousand feet. The only means of access to the plaintiffs' property *from the public highway* is the right of way involved in this litigation which, in the record, was referred to as "the Brown Road."

After evaluating extensive testimony, the Justice below mandated the following judgment:

"Accordingly it is ORDERED and ADJUDGED:

(1) that the Plaintiffs have acquired a prescriptive easement in the roadway across Defendant's land, known as the "Brown Road"; to the extent that he [sic] may travel the roadway *for recreational purposes* and for the purposes of hauling logs and other natural resources situated on the premises known as the 'Brown Lot.'" (Emphasis supplied.)

■ We have read the findings of the Justice and are satisfied that he premised his conclusion on evidence sufficient to establish the plaintiffs' and their predecessors' use of the Brown Road for a period in excess of twenty years, that this use was sufficiently "continuous and uninterrupted" to exclude any presumption of an abandonment of the claimed easement and was likewise uninterrupted by any act of the owner of the servient estate and, within legal contemplation, was with the knowledge and acquiescence of the defendant and his predecessors in title. *Fitanides v. Holman,* 310 A.2d 65, 68 (Me.1973); *Dartnell v. Bidwell,* 115 Me. 227, 230, 98 A. 743, 744 (1916); *Rollins v. Blackden,* 112 Me. 459, 465, 92 A. 521, 525 (1914); *Cox v. Forrest,* 60 Md. 74, 80 (1882).

■ If there were facts in the record which support the conclusions reached by the Justice below even though those facts were disputed by testimony contra thereto, we may not set aside these findings unless we can demonstrate their clearly erroneous foundation. *Fitanides v. Holman, supra* ; Rule 52(a), M.R.C.P.

Our review of the record finds sufficient believable evidence to support the conclusion reached by the Justice as to the acquisition of the prescriptive easement.[1]

---

1. Irving C. Hannon, father of the plaintiff Alta J. Benner, acquired title to the so-called Brown Farm by a conveyance dated August 13, 1923. He conveyed this property to his daughter and her husband (the plaintiffs) on September 14, 1962. Plaintiffs were the owners when the complaint was filed on December 15, 1971.

The defendant's property is commonly known as the Amasa Dunton Farm and was

Hereinbefore we have quoted the exact judgment. We are concerned over the breadth of the language employed since the Justice below deemed that the *scope* of the easement would include travel "for recreational purposes."

The testimony established that the defendant had constructed a road running roughly parallel to the shore of Lake St. George which served as an access road to a number of cottage lots which he had sold along the shore of the lake. This road, of course, terminated at the westerly line of the plaintiffs' property. We are likewise aware that the plaintiffs own approximately two thousand feet of shore front on the lake, which could easily be developed into summer cottage lots.

It is undisputed that the plaintiffs had unsuccessfully attempted to purchase a

right of way from the defendant to their shore frontage. There had been unproductive discussions concerning sharing in the cost of building the access road to the defendant's lake frontage, which could readily have been extended easterly onto the plaintiffs' land.

■ A right of way gained by prescriptive use is not unlimited. It has certain parameters which are, in general, controlled by the burden placed on the servient estate during the prescriptive period. As the Massachusetts Court put it:

"The extent of an easement arising by prescription, unlike an easement by grant [citations omitted] is fixed by the use through which it was created."

*Lawless v. Trumbull,* 343 Mass. 561, 180 N.E.2d 80, 82 (1962). Restatement of Property, § 477; Annot., 5 A.L.R.3d 439, 447,

---

acquired by him from Ethel S. Baker on June 3, 1955.

The evidence introduced by the defendant was in sharp contrast to that offered by the plaintiffs. The essence of the defense testimony was that the Brown Road was non-existent until some time in the 1940s when the road was opened for the purpose of removing lumber products. The evidence is undisputed that in 1955 the defendant forbade Mr. Hannon the use of this road and this proscription was likewise given the plaintiffs after 1962.

The plaintiffs introduced several witnesses who described using this road, particularly for lumbering purposes, and hauling over it both from the Dunton Farm, the Brown Farm, and another wood lot easterly of the Brown Farm prior to the 1940s. The plaintiffs' uncle described driving on the road in 1924 with a "Model T."

Irving C. Hannon's testimony was particularly impressive. It will be remembered that he was the owner of the Brown Farm from 1923 to 1962. Mr. Hannon was thirty years old when he purchased the property and with the exception of one year lived in Liberty thereafter. His evidence, if believed, would depict an annual use of the Brown Road to get from the Marshall Shore Road to the Brown Farm over the same locus as was depicted on a plan drawn by plaintiffs' surveyor, marked "Plaintiffs' Exhibit 2." This plan, in the mind of this witness, depicted "the same old road that is there now." Mr. Hannon and those performing services for him used this road for both motor vehicles and horses. Pulpwood and long lumber were cut on the Brown Farm and taken to market via this road. Annually Mr. Hannon would cut

boughs on the Brown Farm to use for banking his house and would remove them via this access route. He and his wife enjoyed frequent summer picnics on the property, and his wife also for many years picked juniper berries, which he described as being sold "to Russia." Additionally, he would gain access to his property over this road for other useful purposes, including hunting. He gave other people permission to cut boughs for banking purposes on his land and they likewise entered it over this right of way.

Mr. Hannon's testimony was particularly interesting when he described his purchase of the property in 1923. On cross-examination he was asked why the deed to him did not include a right of way and the record discloses this answer:

"Well, Ralph Morse made my deed out, see, and I asked him, I said, 'How about the right-of-way?' and he said, 'There is no need to put anything in there.' He said, 'That road has been there for years and years.' He said, 'There is no need to put in in your deed.'"

He also testified that "old settlors told him" that children used to walk over this road from the Brown Farm, on which people then lived to get to an old school house which had long since burned.

The Justice below apparently believed this testimony, as he had a right to do, and our purpose for reciting it in this extensive footnote is to demonstrate that a fact base existed for his ultimate conclusion that the plaintiffs had acquired by prescriptive use an easement across the defendant's property over the "Brown Road."

§ 4. *See Anderton v. Watkins,* 122 Me. 346, 348, 120 A. 175, 176 (1923).

If the plaintiffs were allowed to use the Brown Road as general access to their land for the purpose of developing the sales of shore front cottage property, it would impose an easily foreseeable burden on the defendant's property far in excess of the somewhat sporadic burden it has heretofore been subjected to.

Bearing in mind the potential use predictable if two thousand feet of shore frontage were to be sold for summer cottages, the unlimited right to use the Brown Road "for recreational purposes" would impose a substantial new burden on the defendant's property. It would clearly overload the easement.

■ We hold that the Justice below was correct in ruling that the plaintiffs were entitled to use the Brown Road as a means of access to their property, having acquired that right by prescriptive use; however, one of the purposes stated in the judgment, namely, "for recreational purposes," should be restricted to those general recreational purposes for which the road was used during the period that the prescriptive easement was being created.[2]

The entry is:

Appeal denied but remanded to the Superior Court for an amendment of the judgment to conform with this opinion.

All Justices concurring.

DELAHANTY, J., did not sit.

---

2. While we might suggest appropriate language that a Justice of the Superior Court could use to amend this judgment in accordance with the mandate, we deem it preferable not to do so. We suggest that the matter be brought before the particular Justice of the Superior Court who heard and decided this case initially and who had an opportunity to go on the land and view the locus. We are mindful that Paragraph 3 of the amended complaint contains a description by metes and bounds of the easement prepared by a professional surveyor. In the abstract we are unable to appreciate the physical locations required by this description. The Court on remand could determine to hold a hearing for the purpose of giving the litigants an opportunity to be heard and to suggest language amenable to this mandate.