Pearl B. WIDELL, Plaintiff-Appellant-Cross Respondent,†

v.

Clarence A. TOLLEFSON, and Donna L. Tollefson, Defendants-Respondents-Cross Appellants.

Court of Appeals

*No. 89–2140. Submitted on briefs June 18, 1990.—Decided October 23, 1990.*

(Also reported in 462 N.W.2d 910.)

†Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For plaintiff-appellant-cross respondent there were briefs by *Patrick F. Brown* of *DeBardeleben & Associates,* Park Falls.

For defendants-respondents-cross appellants there were briefs by *Thomas D. Bell* of *Doar, Drill & Skow, S.C.,* New Richmond.

Before Eich, C.J., Cane, P.J. and Myse, J.

MYSE, J. Pearl Widell appeals a judgment dismissing her complaint against Clarence and Donna Tollefson for the wrongful death of her husband, Gordon Widell, and restricting her prescriptive easement to use a road over the Tollefsons' property to seasonal use. Widell argues that the trial court erred by dismissing her complaint against the Tollefsons, concluding as a matter of law that the Tollefsons' conduct was not the proximate cause of her husband's death. She also claims the court improperly restricted the prescriptive easement to seasonal use and improperly failed to specify the easement's width. The Tollefsons cross-appeal, arguing that the evidence was insufficient to prove a prescriptive easement because the evidence failed to establish that the use of the Tollefsons' property was "hostile" and "continuous."

Because we conclude that the Tollefsons' conduct is too remote to be the proximate cause of Gordon's death, that credible evidence sustains the jury's finding of a prescriptive easement and that the judgment describes sufficiently the physical boundaries of the easement, we affirm that portion of the judgment. However, because the court restricted the use of the prescriptive easement to April through October without finding that winter use would unreasonably burden the servient estate, we reverse that portion of the judgment.

The Widells owned a parcel of land in Sawyer County with the southern shore of Schoolhouse Lake forming the northern boundary of their property and the northern shore of Durphee Lake forming the southern boundary. The Tollefsons owned adjoining property with similar frontage on both lakes. The Widells purchased their property from Gladys Tusken in 1977. The Tollefsons purchased their parcel in 1986 from Lillian Larson. The Tuskens used a gravel road on the Larson/Tollefson

parcel to obtain access from their Durphee Lake frontage to their Schoolhouse Lake frontage from 1962 to the time the Widells acquired title. The Widells continued to use this access road following their purchase of the Tuskens' property until June of 1987 when the Widells found posts and a gate erected on the Tollefsons' land blocking the road and restricting the Widells' access to their Schoolhouse Lake frontage.

Widell alleges that this discovery caused Gordon Widell to become upset and emotionally distraught. She contends that Gordon took a handsaw and began cutting down trees adjacent to the gate for the purpose of clearing a path around the barricade. Gordon, who suffered from arteriosclerosis and hypertension, sustained a heart attack and died after performing this task. Widell alleges that, by erecting the gate, the Tollefsons caused Gordon emotional aggravation and physical overstress that resulted in his death. Widell filed a complaint seeking damages for wrongful death and a declaration of her right to a prescriptive easement for use of the access road. The court granted a motion for a directed verdict dismissing Widell's claim for wrongful death.

The jury ultimately determined that Widell had acquired a prescriptive easement to use the road across the Tollefsons' property. The court then limited the easement to April through October of each year, assumably because the evidence demonstrated that the Widells only used their property during those months.

Legal cause in negligence consists of cause-in-fact and "proximate cause," or policy considerations. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660, 666 (1979). Cause-in-fact exists when the negligent conduct is a substantial factor contributing to

the injury. *Id.*[1] However, public policy considerations may preclude liability despite a finding of negligence and cause-in-fact. *Id.* at 737, 275 N.W.2d at 667. Some of these public policy factors are: (1) whether the injury is too remote from the negligence; (2) whether the injury is wholly out of proportion to the culpability of the negligent tortfeasor; (3) whether it retrospectively appears too highly extraordinary that the negligence should have brought about the harm; (4) whether the allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; (5) whether the allowance of a recovery would be too likely to open the way for fraudulent claims; or (6) whether the allowance of recovery would have courts entering a field that has no sensible or just stopping point. *Id.*

Determination of proximate cause through evaluation of these public policy considerations presents a question of law. *See Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976). Appellate courts review conclusions of law de novo. *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). We conclude that the trial court properly determined that the Tollefsons' conduct in erecting a barricade across their property was not the proximate cause of Gordon Widell's death.

At least two of the public policy factors we have identified compel this conclusion. First, the Tollefsons' negligence in putting a barricade across the access road is too remotely related to Gordon Widell's death to permit recovery. Gordon's existing heart condition and his decision to physically exert himself were significant fac-

---

[1]For the purpose of this analysis, we will assume that the Tollefsons' conduct was negligent and the cause-in-fact of Gordon Widell's death.

tors that came between the building of the gate and Gordon's death. Second, Gordon's death is wholly out of proportion with whatever culpability was involved in erecting the gate. No reasonable person would foresee that building this gate would result in such harm. Because of this lack of foreseeability, Gordon's death is out of proportion to the Tollefsons' culpability.

Widell argues that *Colla v. Mandella*, 1 Wis. 2d 594, 85 N.W.2d 345 (1957), supports her claim that the Tollefsons' conduct was the proximate cause of Gordon Widell's death. In *Colla*, a parked truck had rolled down a hill and hit the side of a house. The house's occupant who suffered from high blood pressure and a heart condition had a heart attack and died because of the noise resulting from the crash. The supreme court held that public policy did not deny recovery in that case.

Widell's reliance on *Colla* is misplaced. The facts of this case are at least one step removed from those that existed in *Colla*. The deceased in *Colla* did nothing that contributed to his heart attack. Rather, his death was the result of his involuntary reaction to a truck crashing into his home. As the court stated in *Colla*, "[t]o the suggestion that the damages in the present case are wholly out of proportion to [defendant's] culpability, it may be answered that neither Colla nor the plaintiff, his wife, were negligent or culpable at all, and hence it would be more unfair to leave the burden on them than to put a part of it on the defendants." *Id.* at 600, 85 N.W.2d at 349. Gordon Widell, however, contributed to his heart attack by engaging in strenuous physical conduct he deliberately chose to undertake notwithstanding his knowledge of his own heart problems.

Widell also argues that the trial court erred by failing to submit the cause-in-fact issue to the jury before

evaluating proximate cause by application of the public policy factors. Under some circumstances this may be the preferred method of proceeding, but proceeding in such a fashion is not an absolute requirement. *Morgan,* 87 Wis. 2d at 737–738, 275 N.W.2d at 667. The trial court addressed the issue of proximate cause after hearing and evaluating all the evidence introduced by Widell. We are satisfied that the trial court correctly determined as a matter of law that the Tollefsons' conduct was not the proximate cause of Gordon Widell's death.

The Tollefsons cross appeal, claiming that there is insufficient evidence to demonstrate that the Widells' use of this property was "hostile" and "continuous." A prescriptive easement is created by use that is adverse, hostile and inconsistent with the exercise of the titleholder's rights; visible, open and notorious; under an open claim of right; and continuous and uninterrupted for twenty years. *Ludke v. Egan,* 87 Wis. 2d 221, 230, 274 N.W.2d 641, 646 (1979). The unexplained use of property for a period of twenty years is presumed adverse and under a claim of right. *Id.* at 230–231, 274 N.W.2d at 646.

We review a claim of sufficiency of the evidence with deference to the fact-finder. If there is any credible evidence supporting the jury verdict, we will sustain it. *Fehring v. Republic Ins. Co.,* 118 Wis. 2d 299, 305–06, 347 N.W.2d 595, 598 (1984). The determination of the credibility of witnesses and the weight afforded their testimony is left to the fact-finder. *Id.*

We therefore examine the evidence to see whether a reasonable fact-finder could conclude from this evidence that the Widells' use of the access road was "hostile" and

684

"continuous." The Tollefsons argue that the use was not "hostile" because the Tuskens and Larsons were related and had a very close relationship. However, "hostile" does not mean "unfriendly intent" or require a "manifestation of ill will." *Shellow v. Hagen,* 9 Wis. 2d 506, 511, 101 N.W.2d 694, 697 (1960). Hostility merely requires that the use be inconsistent with the titleowner's rights. *Id.* The evidence demonstrated that the Widells and the Tuskens made use of this road for more than twenty years prior to the Tollefsons building a gate. As noted, twenty years of unexplained use gives rise to a presumption that the use is hostile and adverse. Friendship and close personal relationships are not sufficient to rebut the presumption of hostility and adverseness. *See Shepard v. Gilbert,* 212 Wis. 1, 11, 249 N.W. 54, 58 (1933). Such evidence may indicate acquiescence but does not prove the type of permission needed to overcome the presumption of adverse use. *Id.* Also, there was testimony that the Tuskens never asked permission to use the road accessing the Schoolhouse Lake frontage. We therefore conclude that credible evidence supports the jury's conclusion that the Widells' and the Tuskens' use of this property was hostile.

■■■■■■ The Tollefsons also argue that the evidence fails to support a finding of continuous use. The Tollefsons claim that the Tuskens barely used the access road prior to 1968 when they put a mobile home on the Schoolhouse Lake frontage. Continuity of use depends on the nature and character of the right claimed. *Shellow,* 9 Wis. 2d at 512, 101 N.W.2d at 697. Such use need not be constant, daily or weekly. *Id.* In the instant case, the Widells and the Tuskens used the road to access their property on Schoolhouse Lake. There was testimony that the Tuskens used the road two to three times a

weekend prior to 1968 and twenty times each day that they used their property thereafter. The fact that they did not use the road as frequently prior to 1968 as they did later does not rebut the finding of continuous use. We conclude that credible evidence supports the jury's determination that the adverse use of this road was continuous.

Next, we address the issue of whether the seasonal use of this road justified the trial court's corresponding limitation on the prescriptive easement. The jury found that Widell had a prescriptive easement to use the road for ingress and egress. The court went on to restrict the easement to seasonal use, assumably because such use gave rise to the easement. We conclude that the court erred by imposing this restriction.

The law is well settled that the scope of a prescriptive easement is determined by the scope of the use giving rise to the easement. *Red Star Yeast & Prod. Co. v. Merchandising Corp.*, 4 Wis. 2d 327, 339, 90 N.W.2d 777, 783 (1958). However, because no use can ever be exactly duplicated, the use giving rise to a prescriptive easement determines only the general outlines of the easement, rather than the minute details of the interest. *Lawless v. Trumbull*, 180 N.E.2d 80, 82 (Mass. 1962), (citing Restatement of Property sec. 477 comment b (1944)). Variations in use "must be consistent with the general pattern formed by the adverse use." *Id.* Similarly, the use giving rise to the easement furnishes a "pattern" for use of the easement that allows uses similar to that which produced the easement. *Red Star Yeast*, 4 Wis. 2d at 338–39, 90 N.W.2d at 783 (citing 2 American Law of Property at 280, sec. 8.68). Otherwise stated, "his rights are confined to a *reasonable* use of the way which he had acquired by prescription, in view of all

the circumstances of the case and the use then and theretofore made of the premises affected by it." *Dyer v. Walker,* 99 Wis. 404, 407, 75 N.W. 79, 80 (1898) (emphasis added). Conversely, a prescriptive right cannot generally justify added use "in a manner far different from that employed under the original use." *S.S. Kresge Co. v. Winkelman Realty Co.,* 260 Wis. 372, 376, 50 N.W.2d 920, 922 (1952). This statement is in accord with the rule that the owner of the dominant estate may increase the use of the easement provided that such increased use does not unreasonably burden the servient estate. *See Elder v. Northwest Timber Co.,* 613 P.2d 367, 370 (Idaho 1980).

The reasonable use analysis rejects automatic time-based restrictions. Widell testified that they vacationed at their property during the warmer months (April to October). While they were there, they used the access road to Schoolhouse Lake. It would be consistent with this general pattern if Widell used the road during the first week in November if she were then at her property. Likewise, it would seem reasonable for her to use the road during the last week in March. Moreover, if the road were never used before noon, would the easement then be automatically limited so as to preclude morning walks by the Widells to Schoolhouse Lake? We believe it would not. Such strict limitations are inconsistent with the reasonable use analysis.

This analysis does not preclude time-based restrictions. Rather, the analysis requires that such restrictions follow an evaluation of the reasonableness of the use. The Tuskens and Widells used the road when they were at their property. This use gave rise to a prescriptive easement to use that road for ingress and egress. Widell may make reasonable use of this easement consistent

with this general pattern. Thus, the trial court erred by restricting the easement absent a finding that winter use would unreasonably burden the servient estate. We remand for a hearing on this issue.

We are aware of one Wisconsin case where the court held that if a prescriptive easement was established, it was limited to the months of use giving rise to the easement. *Chippewa & Flambeau Imp. Co. v. Railroad Comm'n,* 164 Wis. 105, 120–21, 159 N.W. 739, 745 (1916). In that case, the owners of a log-driving dam used it during the spring to create periodic miniature floods for the purpose of floating logs down the river. The plaintiffs purchased the dam and sought to use it to create a reservoir. The court rejected the plaintiff's claim that it had a prescriptive easement to create a flowage.

While some of the court's language supports the argument that seasonal use gives rise to a seasonal easement, the court's decision appears to rest on different considerations. The court focused on the previous and proposed uses of the dam stating that, "[t]hese uses are practically the antitheses of each other." *Id.* at 121, 159 N.W. at 745. The court recognized that the use of a log-driving dam, which involved the temporary buildup of water for immediate flooding, was inconsistent with the purpose of a reservoir dam, which involved a constant backup of water for controlled releases. *Id.* at 122, 159 N.W. at 745. Thus, the court concluded that, "[i]f any prescriptive rights to flow lands were obtained by the owners of the dam before its purchase by the plaintiff they were not rights to [create a reservoir], but rights to acquire a maximum head of water in April and reduce it to zero by July 1st." *Id.*

In the present case, Widell's easement is for ingress and egress. No evidence indicates that she intends to put

the easement to any other use. Thus, *Chippewa & Flambeau* does not control this case.

Finally, Widell argues that the trial court erred by failing to describe in its judgment the roadway as being ten feet wide. In the interest of a permanent settlement of the controversy, the judgment should describe the servient property by "metes and bounds." *See Brockman v. Brandenburg,* 197 Wis. 51, 55, 221 N.W. 397, 398 (1928). In this case, the judgment contains a meticulous description of the location of the centerline of the road. It also describes the types of use that may be made of the easement. The width is simply that which is "reasonable, convenient and necessary to accomplish the purpose for which the right-of-way was created." *Moore v. Reynolds,* 330 S.E.2d 542, 545 (S.C. App. 1985). While the judgment does not give a precise width, we conclude that the term "driveway (roadway)" referred to in the judgment is sufficient description to adequately identify the easement in question.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. Costs denied to both parties.