Thomas E. PRICE, Jr., Appellant,

v.

Mike EASTHAM, Veldon "Spud" Dillon, Lorraine Templeton, Bruce Turkington, Lee Krumm, La Velle Dillon, Bob Fenex, Carol Fenex, Bruce Willard, Linda Willard, Butch Bullard, Gordon Grebe, Diane Grebe, Eric Overson, Sam Matthews, Nancy Matthews, Ray Kranich, Eilene Wythe, Jack Alexander, Sue Alexander, Rick Alexander, Reed Alexander, Dave Sanders, Shirley Sanders, Greg McCullough, Lloyd Moore, Penny Moore, Tammy Hagan, Chuck Hagan, Kate Mitchell, Ben Mitchell, Ronnie Morrison, Barb Hrenchir, Mike Hrenchir, Gus Weber, Rita Weber, Bob Simcoe, Mark Jacobs, Barb Jacobs, Sharon Thompson, Rick Thompson, Fred Thompson, Connie Thompson, Mike Devaney, Rick Anderson, Dave Weber, Mark Robl, Terry Robl, Toras Fisk, Dave Boone, Marasha Boone, George Eschin, Jim Bills, Mike O'Malley, Joe O'Malley, Bill Markel, Gordon Berg, Floyd Newkirk, Karl Horst, Robert Pelky, Robert Plymire, Don Blackwell, Valda Ziemelis, Randy Whitehorn, Connie Whitehorn, Willie Bishop, Hans Albertson, Bill Sampson, Mike Arno, Allen Englebretson, Rodney McLay, Jim Spencer, Jimmy Spencer, Joe Wright, Jason Kinnard, Amy Kinnard, Sam Wright, Paul Budge, Brian Bellamy, Rick Wise, Nathan Wise, John Wise, Jacob Wise, Marty Wise, Jake Ellyson, Carol Ellyson, Bill Sheldon, Leroy Cabana, Sr., Doris Cabana, Larry Cabana, Dawn Cabana, and Scott Connelly, Appellees.

No. S–10418.

Supreme Court of Alaska.

Aug. 15, 2003.

---

Thomas E. Meacham, Anchorage, for Appellant.

Michael Hough, Homer, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Mike Eastham and ninety-one plaintiffs claimed a right to a prescriptive easement over a portion of Thomas Price's land near Homer. The superior court found that a right-of-way existed under 43 U.S.C. § 932, Revised Statute (RS) 2477, commonly known as an RS 2477 right-of-way, over Price's property. The superior court held, alternatively, that a prescriptive easement existed over Price's property. Price appealed. Because the parties did not have an opportunity to address the RS 2477 issue at trial, we reverse the superior court's ruling on that ground. Although we affirm the superior court's finding of a prescriptive easement, we remand for a precise determination of the easement's scope.

## II. FACTS AND PROCEEDINGS

### A. Factual History

#### 1. The trail

Snomads, Inc., a group of snowmachiners, originally filed this case against Thomas Price in May 1999, seeking a prescriptive easement over a trail located on Price's property. They alleged that they and others— dog team mushers, hunters, and campers— had used the trail since approximately 1956 to access recreational areas near Price's property. The trail bisects the southern boundary of Price's land and runs toward the northeasterly corner of his property. Although Price became aware of the trail in 1979 or 1980, he first attempted to prevent the public's use of the trail by posting "no trespassing" signs in November 1998. In January 1999 Price complained to the state troopers about the snowmachiners trespassing on his land. This was the first time he publicly complained about the trail's use.

## 2. Price's property

Price's parcel of land is located at the head of Kachemak Bay, near Homer, and is approximately 160 acres in size. The nature of Price's ownership interest in the land is significant to his arguments regarding the validity of the superior court's grant of an easement across his property. In July 1978 Price purchased the agricultural interest in the land from the state. The contract for the sale defined "agricultural interests" as the "surface estate in fee simple subject to the conditions subsequent and covenants relating to agricultural use and development set out in 11 AAC 67.162(b)." Under the contract, Price agreed to develop and use the land according to approved farm development and farm conservation plans. He paid $33,000 for the land, divided into ten yearly payments. The property that Price bought was subject to several preexisting interests including three easements and an oil and gas lease.

The state granted the surface estate in fee simple to Price, subject to certain restrictions, in a land patent dated January 1988. Specifically, the grant was subject to a condition subsequent limiting Price's use of the land: "[I]f the property is used for purposes other than agricultural purposes, then the Grantor may enter the property and terminate the estate conveyed herein." The grant included a related covenant that Price would

> use the property for agricultural purposes only, which may include personal residential use incidental to farm operations on the property, and [would] operate in accordance with a Farm Conservation Plan approved by Grantor and further agrees that these covenants shall run with the land and shall be binding upon the Grantee and all other persons and parties claiming through the Grantee.

On December 1, 1981, Price granted to Louise Crane an easement that allowed Crane access to her property. Price sent the easement agreement to the State Department of Natural Resources for approval on January 20, 1982. The easement was recorded in April 1982.

## B. Procedural History

Snomads, Inc. filed suit against Price in May 1999, claiming that it had perfected a prescriptive easement over Price's property. Snomads alleged that the trail was established in approximately 1956 and that they and other recreational users had used the trail continuously since then. Price filed an answer, disputing the claim of entitlement to a prescriptive easement and asserting several counterclaims. Primarily, Price asked the court for injunctive relief to keep the plaintiffs off his land. Snomads denied all counterclaims.

Snomads as an entity did not survive this litigation. Because the recreational group only incorporated in 1992, and because it takes ten years of use to show a prescriptive easement, Snomads, Inc. was not a viable plaintiff in a 1999 action. Consequently, Mike Eastham, a Snomads member, amended the complaint deleting Snomads as a party and substituting ninety-one individual plaintiffs. These plaintiffs are referred to as "Eastham."

The case went to trial in January 2000 before Superior Court Judge Harold M. Brown in Homer. Judge Brown concluded that the trail at issue was an RS 2477 right-of-way. Because the court found that an RS 2477 right-of-way existed, it declined to decide whether a public or private easement was created.

Price then moved for reconsideration of the trial court's order, arguing that an RS 2477 right-of-way could not have been created on his land. In denying Price's motion for reconsideration, the court supplemented its earlier ruling by determining that Eastham had established that a public prescriptive easement existed across Price's land, in addition to the RS 2477 right-of-way. Price filed a second motion for reconsideration of the prescriptive easement holding, which the court denied.

The court denied relief to Price on all of his counterclaims and entered judgment in October 2001. Costs and attorney's fees were awarded to Eastham. Price appeals the trial court's decision.

## III. STANDARD OF REVIEW

A superior court's determination that an RS 2477 right-of-way exists is based upon factual findings about property use and legal conclusions about whether the use was sufficient to establish an RS 2477 right-of-way.[1] We review factual findings under the clearly erroneous standard and will disturb those findings only when "we are left with a definite and firm conviction on the entire record that a mistake has been made, even though there may be evidence to support the finding."[2] We review the application of law to facts de novo.[3]

Price's arguments concerning whether a prescriptive easement can exist on his property raise a legal issue, rather than a factual one. " 'The content of a particular legal doctrine, and what the facts of this case establish under such doctrine is [at] issue' " in the prescriptive easement claim.[4] We are not bound by the lower court's view when deciding questions of law.[5]

## IV. DISCUSSION

### A. The Trial Court Erred in Determining that Price's Property Is Subject to a Public Right–of–Way Under Former 43 U.S.C. § 932, Revised Statute (RS) 2477.

#### 1. Background on RS 2477

The superior court held that a public right-of-way existed over Price's property under 43 U.S.C. § 932, Revised Statute (RS) 2477. Congress enacted this provision, commonly referred to as RS 2477, in 1866 as part of the Lode Mining Act.[6] Under RS 2477, the federal government granted rights-of-way, providing: "[T]he right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."[7] The grant was self-executing, meaning that an RS 2477 right-of-way automatically came into existence "if a public highway was established across public land in accordance with the law of Alaska."[8] Although Congress repealed RS 2477 in 1976, the statute governs this case because the claimed right-of-way would have existed before then.[9]

We have noted that "[t]he operation of § 932 is not obvious from its terms."[10] Indeed, the statute itself is simply an offer to dedicate land to public use.[11] To effect the grant of a right-of-way, either the public or the appropriate state authorities must take positive action.[12] Specifically, the public must use the land "for such a period of time and under such conditions as to prove that the grant has been accepted," or appropriate public authorities of the state must act in a way that clearly manifests their intention to accept the grant.[13]

RS 2477 specified that it provided for the construction of highways over federal "public lands, not reserved for public uses."[14]

1. *Fitzgerald v. Puddicombe*, 918 P.2d 1017, 1019 (Alaska 1996).

2. *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979).

3. *Fitzgerald*, 918 P.2d at 1019.

4. *Walsh v. Emerick*, 611 P.2d 28, 30 (Alaska 1980) (quoting *Peters v. Juneau–Douglas Girl Scout Council*, 519 P.2d 826, 833–34 (Alaska 1974)).

5. *Id.*

6. Leroy K. Latta, Jr., *Public Access Over Alaska Public Lands as Granted by Section 8 of the Lode Mining Act of 1866*, 28 Santa Clara L.Rev. 811, 811 (1988).

7. *Fitzgerald*, 918 P.2d at 1019 (quoting 43 U.S.C. § 932, *repealed by* Pub.L. No. 94–579, Title VII, § 706(a), 90 Stat. 2793 (1976), *quoted in Hamerly v. Denton*, 359 P.2d 121, 123 (Alaska 1961)).

8. *Id.*

9. *See id.* (citing *Dillingham Commercial Co. v. City of Dillingham*, 705 P.2d 410, 413 (Alaska 1985)).

10. *Dillingham*, 705 P.2d at 413.

11. *Id.*

12. *Id.* (citing *Hamerly*, 359 P.2d at 123).

13. *Id.* at 413–14.

14. *Fitzgerald*, 918 P.2d at 1019 (quoting 43 U.S.C. § 932, *repealed by* Pub.L. No. 94–579, Title VII, § 706(a), 90 Stat. 2793 (1976), *quoted in Hamerly*, 359 P.2d at 123); *Humboldt County*

"Public lands" means lands open to settlement or other disposition under federal land laws.[15] Therefore, a valid RS 2477 claim could only have been made on the land in question before December 29, 1959, when the State of Alaska filed a land selection application with the Bureau of Land Management for lands encompassing Price's land. As soon as the state filed its application, the lands it selected were "segregated from all applications and appropriations under the public land laws." We therefore must determine whether the trial court erred in holding that an RS 2477 right-of-way existed prior to 1959.

To determine whether sufficient public use exists to establish an RS 2477 right-of-way, courts usually consider two factors: evidence of use and evidence of the route's definite character.[16] However, a preliminary issue in this case makes it unnecessary for us to reach the merits of the RS 2477 claim. Neither of the parties raised the issue of an RS 2477 right-of-way at the trial court level. Rather, the trial court—declining to rule upon the prescriptive easement claim Eastham presented—found on its own that an RS 2477 right-of-way existed over Price's land. This lack of notice raises serious due process concerns.

 The Alaska Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law."[17] We have held repeatedly that "[p]rocedural due process under the Alaska Constitution requires notice and opportunity for hearing appropriate to the nature of the case."[18] Parties must have notice of the subject of proceedings that concern them "so that they will have a reasonable opportunity to be heard."[19] "A hearing is required in order to give the parties an opportunity to present

the quantum of evidence needed [for the court] to make an informed and principled determination."[20]

 Because Price did not have notice that an RS 2477 right-of-way was at issue, his due process rights were violated. Here, Price did not have an opportunity to be heard on the RS 2477 matter; in fact, he reasonably believed that RS 2477 was not at issue. Accordingly, we hold that the trial court's failure to give Price notice and an opportunity to be heard and to present evidence on the RS 2477 issue at trial violated his due process rights, and we therefore reverse the superior court's finding of an RS 2477 right-of-way on Price's land.

**B. A Prescriptive Easement Exists Across Price's Land.**

Although Eastham claimed entitlement to a prescriptive easement in his complaint, the superior court initially declined to rule on that claim, finding instead that an RS 2477 right-of-way existed across Price's property. Later, however, in denying Price's motion for reconsideration on the RS 2477 ruling, the superior court held that a prescriptive easement existed over the land, finding that "the public at large has been using the trail in a continued and uninterrupted manner for at least the ten years prior to the filing of this suit." Price moved for reconsideration of the prescriptive easement ruling. The court denied his motion.

Price argues that the superior court erred in holding that a prescriptive easement exists over a corner of his property. His argument hinges upon AS 38.95.010 which provides:

No prescription or statute of limitations runs against the title or interest of the state to land under the jurisdiction of the

---

v. *United States*, 684 F.2d 1276, 1280 (9th Cir. 1982).

15. *Hamerly*, 359 P.2d at 123.

16. Mitchell R. Olson, *The RS 2477 Right of Way Dispute: Constructing a Solution*, 27 ENVTL. L. 289, 301 (1997) (citing *Hamerly*, 359 P.2d at 123–25; *Dillingham*, 705 P.2d at 414–15).

17. Alaska Const. art. I, § 7.

18. *Walker v. Walker*, 960 P.2d 620, 622 (Alaska 1998) (internal quotations omitted); *see also Lashbrook v. Lashbrook*, 957 P.2d 326, 328 (Alaska 1998); *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998).

19. *Potter v. Potter*, 55 P.3d 726, 728 (Alaska 2002) (citation omitted).

20. *Walker*, 960 P.2d at 622 (quoting *Howlett v. Howlett*, 890 P.2d 1125, 1127 (Alaska 1995)).

state. No title or interest to land under the jurisdiction of the state may be acquired by adverse possession or prescription, or in any manner except by conveyance from the state.

Price asserts that because he only owned the agricultural interests in his land during the relevant time period[21] and because the state retained all other interests, any claim of a prescriptive easement across his land violates AS 38.95.010.[22]

██ Because a prescriptive easement may be obtained where the holder of the servient property does not own the property in fee simple, but rather holds a lesser interest in the property,[23] Eastham's easement claim does not violate AS 38.95.010. A prescriptive easement may be claimed against an individual who holds less than a fee simple interest in the land, such as a leaseholder.[24] The Superior Court of New Jersey addressed this issue in *Ludwig v. Gosline.*[25] In *Ludwig,* the Gosline family claimed that they had acquired a prescriptive easement over a portion of their neighbors' property.[26] Both the Goslines and their neighbors leased their properties.[27] In holding that the easement existed, the court noted that the servient property holder need not own the fee.[28] "An easement by prescription may be obtained against the holder of a present interest subject to divestment if and when the property passes to the holder of a future interest."[29]

██ Price, like the Goslines, did not own his land in fee simple; he only owned the agricultural interest in the land. The land patent that the state conveyed to Price in 1988 contained the condition subsequent that

if Price used the property for non-agricultural purposes, the state could enter Price's property and terminate the estate it granted to him. Even though he did not own the land in fee simple, *Ludwig* shows that Eastham's prescriptive easement claim is valid, but only against Price's ownership interest. The trial court considered the limits of Price's ownership interest in its order denying reconsideration of the easement holding.

Judge Brown held that although the patent requires that the land be used for agricultural purposes, "the court sees no inconsistency between the requirement of agricultural use and the kind of recreational use at issue in this case." Whether the use of an easement is inconsistent with the servient owner's use of his land is a question of fact.[30] Judge Brown's conclusion that recreational use of the trail is not inconsistent with Price's agricultural use of his land was not clearly erroneous.

The Supreme Court of Virginia addressed a similar issue in *Preshlock v. Brenner.* In *Preshlock,* Janet Brenner owned land subject to a municipal storm sewer easement.[31] The Preshlocks owned the lot next to Brenner. A driveway ran from the street, over a corner of Brenner's property to the Preshlocks' property. The Preshlocks claimed a prescriptive easement over the portion of driveway on Brenner's land. One of Brenner's predecessors in title had conveyed to the city an easement for a storm sewer located under the part of Brenner's lot in which the Preshlocks claimed an easement. The trial court held as a matter of law that the Preshlocks could not acquire a prescriptive easement in

---

**21.** We recognize that a September 1998 land patent changed Price's ownership interest in the land and that he now owns the parcel in fee simple, subject to "a perpetual covenant for the benefit of all Alaskan residents [which] restricts the use of the land to agricultural purposes only as defined in AS 38.05.321."

**22.** Price does not dispute the trial court's findings on any of the elements to establish a prescriptive easement. Because they are not contested, we do not address them.

**23.** *Ludwig v. Gosline,* 191 N.J.Super. 188, 465 A.2d 946, 947 (1983).

**24.** *Id.*

**25.** *Id.* at 946.

**26.** *Id.* at 947.

**27.** *Id.*

**28.** *Id.*

**29.** *Id.*

**30.** *Preshlock v. Brenner,* 234 Va. 407, 362 S.E.2d 696, 698 (1987).

**31.** *Id.*

the land because "no prescriptive right can be acquired in property affected with a public interest or dedicated to a public use." [32] The Virginia court reversed this ruling, holding that the Preshlocks could acquire a prescriptive easement in the land, despite the presence of the city's easement.[33] The court reasoned that Brenner could make any use of her property that did not unreasonably interfere with the city's easement and that she could grant this right to a third party.[34] The court noted that the Preshlocks conceded that their prescriptive rights would be subject to the city's rights and could not interfere with the city's easement.[35]

As with Brenner, Price owns land subject to government interests. Eastham, like the Preshlocks, does not claim a prescriptive easement against those government interests, but against Price.[36] While Price must use his property for agricultural purposes, as long as he satisfies that condition of his patent he can presumably make any other use of his property. Price could grant an easement or alternatively have a prescriptive easement granted against him, that does not interfere with his mandate to use the land for agricultural purposes. Accordingly, we affirm the superior court's finding that a public prescriptive easement exists over Price's land.

Because the prescriptive easement was an alternative ruling for the trial court, it did not discuss the easement's scope. The scope of a prescriptive easement is defined narrowly to include only the "use that created the easement and closely related ancillary uses." [37] "Because an easement directly affects ownership rights in the servient tenement, judicial delineation of the extent of an easement by prescription should be undertaken with great caution." [38] According to the Restatement (Third) of Property, determining the extent of a prescriptive easement should focus on the servient estate owner's reasonable expectations: "The relevant inquiry is what a landowner in the position of the owner of the servient estate should reasonably have expected to lose by failing to interrupt the adverse use before the prescriptive period had run." [39] Although the use made of a prescriptive easement may evolve beyond the original prescriptive uses, new uses cannot substantially increase the burden on the servient estate or change the nature and character of the easement's original use.[40]

Courts have restricted the scope of prescriptive easements significantly to limit the burden on the servient estate. For example, courts have limited use of prescriptive easements to specific times of the year [41] and have limited the width of prescriptive ease-

---

32. *Id.*

33. *Id.*

34. *Id.*

35. *Id.*

36. Thus, if the state has occasion to terminate the estate that it granted to Price, the prescriptive easement will also terminate.

37. RESTATEMENT (THIRD) OF PROP: SERVITUDES § 4.10 cmt. d (2000); *see also Wright v. Horse Creek Ranches*, 697 P.2d 384, 388–89 (Colo.1985); *Benner v. Sherman*, 371 A.2d 420, 422 (Me.1977); *House v. Hager*, 130 Or.App. 646, 883 P.2d 261, 265 (1994); *Widell v. Tollefson*, 158 Wis.2d 674, 462 N.W.2d 910, 914 (Wis.App.1990).

38. *Wright*, 697 P.2d at 388.

39. RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 4.1 cmt. h (2000).

40. *House*, 883 P.2d at 264–65; *see Twin Peaks Land Co. v. Briggs*, 130 Cal.App.3d 587, 595, 181 Cal.Rptr. 25 (Cal.App.1982) (reversing trial court's broad description of easement—"[Easement] may be used all hours of the day and all times of the year, and for many purposes, including hunting, pasturing cattle and horses and maintaining cabins, maintaining the roadway, entertaining guests, cutting firewood and having picnics and barbeques"—and remanding for modification consistent with rule that subsequent use of easement must be reasonably related to use made during prescriptive period).

41. *Block v. Sexton*, 577 N.W.2d 521, 526 (Minn. App.1998) (holding trial court did not err in limiting scope of prescriptive easement to ingress and egress from May to October reasoning that "the extent of an easement depends upon the character and purpose of the use"). *Cf. Widell*, 462 N.W.2d at 914 (reversing trial court's decision to limit use of prescriptive easement to April to October and remanding for findings on whether winter use would unreasonably burden servient estate).

ments.[42] In considering a prescriptive easement for recreational purposes, the Supreme Judicial Court of Maine limited the use of the easement to the "general recreational purposes for which the road was used during the period that the prescriptive easement was being created."[43] The court reversed the trial court's restriction of the easement to travel for "recreational purposes" as overly broad, reasoning that vaguely defined "recreational purposes" could lead to excessive burdening of the servient estate.[44] Therefore, the court remanded the case for a more specific delineation of permissible uses of the prescriptive easement.[45]

Because the superior court did not define the extent of the prescriptive easement over Price's land, we remand for a determination of the scope of this easement. The court is free to impose restrictions upon the easement consistent with the Restatement (Third) and this decision, including, for example, limiting use to certain seasons, prescribing the width of the easement, and specifying the precise uses that may be made of the easement.

## V. CONCLUSION

Because a prescriptive easement can be claimed against a land holder who owns less than a fee simple interest in the land, we AFFIRM the superior court's holding that a prescriptive easement exists over Price's property and REMAND for a determination of the easement's precise scope. Because the parties did not have an opportunity to address the RS 2477 issue at trial, it was error for the trial court to hold that an RS

---

2477 right-of-way existed. Accordingly, we REVERSE the trial court's RS 2477 ruling.[46]

---

**42.** *Hash v. Sofinowski,* 337 Pa.Super. 451, 487 A.2d 32, 36 (1985) (holding width of prescriptive easement limited to width of vehicles used to make easement); *Johnson v. Roy,* 279 S.W.2d 20, 21 (Ky.App.1955) (restricting easement width to fifteen feet where servient estate owner had no notice of any use beyond fifteen feet in width).

**43.** *Benner v. Sherman,* 371 A.2d 420, 423 (Me. 1977).

**44.** *Id.* at 422–23.

**45.** *Id.* at 423.

**46.** Because we affirm the trial court's finding of a prescriptive easement, we decline to direct the trial court on remand to hold a new trial on the RS 2477 issue. The plaintiffs requested a prescriptive easement, and they neither pled nor presented evidence on whether an RS 2477 right-of-way existed. However, because the trial court raised sua sponte the RS 2477 issue in the first instance, we leave to the trial court's discretion whether to allow further development of evidence on this issue on remand. If the trial court elects to do so, it should first provide notice and an opportunity to be heard to the State of Alaska.