NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GAIL M. ACKELS | ) | |
| | ) | Supreme Court No. S-15375 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-07-01131 CI |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| LITTLE SQUAW GOLD MINING | ) | <u>AND JUDGMENT</u>[*] |
| COMPANY, | ) | |
| | ) | No. 1546 – July 1, 2015 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Randy M. Olsen, Judge.

Appearances: Thomas R. Wickwire, Fairbanks, for Appellant. Gary A. Zipkin and Josh Van Gorkom, Guess & Rudd, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

## I.    INTRODUCTION

We previously remanded this matter for the superior court to make further findings regarding its decision to hold Gail Ackels jointly and severally liable with her husband, Delmer Ackels, and their jointly owned company, Gold Dust Mines, Inc., for

---

[*]    Entered under Alaska Appellate Rule 214.

damages and attorney's fees and costs arising out of two separate judgments.[1]  On remand, the superior court found that a business partnership existed between Gail and Delmer and that Gail was jointly and severally liable for all the debts of the partnership, including the two judgments at issue here.[2]  Gail appeals this ruling, arguing that the superior court's partnership liability holding violated her right to due process because she had no notice that the superior court was contemplating holding her liable on a partnership liability theory.  Because we find no due process violation on the record before us, we affirm.

## II.   FACTS AND PROCEEDINGS

Our earlier opinion presented a comprehensive discussion of the background of the dispute between Little Squaw Gold Mining Company and Gail, Delmer, and Gold Dust Mines, Inc.[3]  We discuss below only those facts necessary to understand the present appeal.

### A.   Facts

Gail and Delmer are husband-and-wife gold miners.  They operate as a business partnership called "Del and Gail Ackels, DBA Gold Dust Mines."  In 1989 the Ackelses also incorporated Gold Dust Mines, Inc. and caused it to enter into a ten-year lease agreement with Little Squaw that required Gold Dust Mines, Inc. to mine certain

---

[1]    *Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 170 (Alaska 2012).

[2]    The superior court also held that Gail was separately liable under a corporate veil-piercing theory.  Because we affirm on the partnership theory, we do not address Gail's arguments regarding the superior court's decision to pierce the corporate veil and hold Gail liable on that basis.

[3]    *Gold Dust Mines, Inc.*, 299 P.3d at 154-57.

claims owned by Little Squaw.[4]  Although the contract was between Little Squaw and Gold Dust Mines, Inc., Gail and Delmer personally worked the claims, and they treated Gold Dust Mines, Inc. as a defunct corporation after it entered into the lease.

After the lease agreement expired in 1999, Delmer and Gail's mining equipment remained on Little Squaw's claims and Delmer began staking claims in his own name.[5] A jury later found that a holdover tenancy existed between Gail, Delmer, and Gold Dust Mines, Inc. and Little Squaw from 1999 until shortly after the Ackelses' relationship with Little Squaw was irrevocably severed in September 2003.

Little Squaw filed this suit several years later to quiet title to and eject the Ackelses from its claims.  Following a lengthy trial, a jury returned a verdict generally in Little Squaw's favor.  Based on that verdict, the superior court awarded the claims to Little Squaw, found that Little Squaw was the prevailing party, and awarded Little Squaw enhanced attorney's fees and costs.  The superior court entered final judgment[6] against Delmer, Gail, and Gold Dust Mines, Inc. jointly and severally.

Several months after the superior court issued the First Judgment, Little Squaw moved for an order to show cause arguing that Delmer was again mining on its claims.  Although the superior court did not find Delmer in contempt, it ordered him to pay the reclamation costs Little Squaw would necessarily incur as a result of his actions. The superior court entered another judgment[7] against Gail and Delmer, jointly and severally, for the reclamation costs and attorney's fees related to the motion for an order to show cause.

---

[4]     *Id.* at 154.

[5]     *Id.* at 155.

[6]     We refer to this judgment as the "First Judgment."

[7]     We refer to this judgment as the "Second Judgment."

Gail and Delmer appealed both judgments.[8] Relevant to our decision in this appeal, we determined that the superior court should have made specific findings regarding its allocation of fault to Gail.[9] We remanded the case for further findings, and potentially further proceedings, regarding allocation of fault.[10]

## B.    Proceedings

After we issued our decision, Gail argued to the superior court that we had reversed the judgments against her; she claimed Little Squaw had seized property in which she had an ownership interest; and she moved for a return of the value of her interest in the seized property. She submitted an affidavit in support of her motion, in addition to other exhibits.

In her affidavit, Gail asserted that she was the "half owner of Del and Gail Ackels, DBA Gold Dust Mines, founded in 1974" and that she and Delmer "ha[d] mined ground in different parts of Alaska for over thirty[-]five years." She noted that since she and Delmer "formed the DBA in 1974, [they] personally ha[d] owned all of [their] equipment." Gail stated that "[h]alf of the purchase price of each and every item of equipment [she and Delmer] owned was purchased one half with [her] funds, usually using a joint bank account of Del and Gail Ackels."

The parties submitted briefs and participated in oral argument regarding Gail's motion. Their discussions focused on whether the superior court should enter specific veil-piercing findings to support the First and Second Judgments as against Gail because she was a part owner of Gold Dust Mines, Inc. Following oral argument, the superior court issued an order supporting its decision to pierce Gold Dust Mines, Inc.'s

---

[8]    *Gold Dust Mines, Inc.*, 299 P.3d at 157.

[9]    *Id.* at 168.

[10]    *Id.* at 169.

corporate veil, but alternatively finding Gail liable because "[she] was jointly and severally liable for the debts and obligations of the partnership, which it [was] uncontested was the entity which was operating in the field after the expiration of the lease through 2003." Gail appeals both rulings.

## III. STANDARD OF REVIEW

Whether the superior court has decided an issue based on a legal theory not argued by one of the parties is a question we initially review under the abuse of discretion standard.[11] An abuse of discretion exists where the superior court's decision was "arbitrary, capricious, manifestly unreasonable, or improperly motivated."[12]

If the superior court has not abused its discretion, we then review the court's decision to determine if it has violated a party's right to due process.[13] Whether a party's right to due process has been violated presents a question of law,[14] which "[w]e review . . . de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[15]

---

[11] *Frost v. Spencer*, 218 P.3d 678, 681-82 (Alaska 2009) (per curiam).

[12] *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010) (quoting *Rhodes v. Erion*, 189 P.3d 1051, 1053 (Alaska 2008)) (internal quotation marks omitted).

[13] This two-tiered approach is used so that we do not reach constitutional issues if the dispute can be resolved on non-constitutional grounds. *Frost*, 218 P.3d at 682; *see also Alaska Trademark Shellfish, LLC v. State*, 91 P.3d 953, 957 n.12 (Alaska 2004) ("We have often recognized that appeals ordinarily should not be decided on constitutional grounds when narrower grounds are available.").

[14] *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 207 (Alaska 2000).

[15] *Id.* (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)) (internal quotation marks omitted).

## IV. DISCUSSION

Gail challenges the superior court's decision, in part, for lack of notice that it would consider holding her liable on the basis of partnership liability.[16] She argues that Little Squaw never alleged that she was liable as Delmer's partner or that the partnership had done anything to affect Little Squaw's rights. She further asserts that Little Squaw did not seek to hold her liable as a partner during the motion practice that followed our decision remanding this case back to the superior court.[17]

### A. The Superior Court Did Not Abuse Its Discretion When It Found Gail Liable On The Basis Of Partnership Liability.

We have held that "[b]asic procedural fairness requires notice and an opportunity for a hearing that is appropriate in light of the nature of the case."[18] The hearing's purpose is "to give the parties an opportunity to present the quantum of evidence needed for the court to make an informed and principled determination."[19] Thus, we will hold that the superior court abused its discretion where it applied an unanticipated body of law if the application of that body of law would have "reasonably led [a party] to present different evidence or to place more emphasis on some of the

---

[16] Alaska Statute 32.06.305(a) makes a partnership "liable for loss or injury caused to a person . . . as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership." Generally, "all partners are liable jointly and severally for all obligations of the partnership." AS 32.06.306(a).

[17] Because we affirm the superior court's finding that Gail is jointly and severally liable for the First and Second Judgments as Delmer's partner, we do not reach her remaining arguments.

[18] *Frost*, 218 P.3d at 682.

[19] *Id.* (alterations omitted) (quoting *Price v. Eastham*, 75 P.3d 1051, 1056 (Alaska 2003)) (internal quotation marks omitted).

evidence that she did present."[20] On the other hand, we may affirm the superior court's decision on any grounds supported by the record.[21]

We conclude that the superior court did not abuse its discretion here. Gail is the one that affirmatively emphasized her partnership with Delmer during the proceedings on remand. She asserted that she was a half owner of a partnership with Delmer and that she and Delmer had been mining together for over thirty-five years. She stated that their mining license was held in the name of the partnership. She also asserted that she and Delmer have personally owned all of their equipment, tools, and personal property since 1974, when they formed their partnership.

Gail also admitted that she contributed half of the purchase price for every piece of equipment they have owned, and she co-signed a loan with Delmer to further their mining activities. Gail later signed an agreement — as part owner of the partnership business — to secure the release of any liens against their equipment.

On appeal to this court, Gail has failed to make a plausible showing that her evidentiary presentation would have been different had she been aware that the superior court might find her liable on the basis of partnership liability. In *Frost v. Spencer* we considered an argument similar to the one Gail makes.[22] In that case we concluded that the superior court had abused its discretion, in part, because Frost made a plausible

---

[20] *Id*.

[21] *Snyder v. Am. Legion Spenard Post No. 28*, 119 P.3d 996, 1001 (Alaska 2005).

[22] 218 P.3d at 681-84. *Frost* involved a misunderstanding about whether domestic partnership law or business partnership law would apply.

showing that she would have presented different evidence if she had known which body of law the superior court was going to apply.[23] Frost argued:

> Had Ms. Frost been given proper notice of the legal standards that the trial court was going to apply to her case, however, she would have been able to put on evidence of:
>
> • The specific nature of the original partnership agreement with Spencer;
>
> • How the partnership agreement was fundamentally amended when Ms. Frost's wedding business began at Raven Glacier Lodge;
>
> • Ms. Frost's capital contributions in the form of foregoing her inheritance and in the form of monies generated by her own separate business activities;
>
> • The business purposes of various items at the Raven Glacier Lodge (i.e. whether they were for the purposes of the partnership business or for separate purposes); [and]
>
> • Advances of partnership assets made to Spencer.[24]

Each of these points indicated specific categories of information to which Frost would have testified or sought to have admitted into the record.

Gail's allegations, by contrast, do not demonstrate that her evidentiary presentation would have been different. Instead, she states that certain types of evidence are not in the record without ever indicating that she could, and would, have introduced additional evidence on particular subjects. A party claiming she should have received notice and a hearing must make a plausible showing of what different, relevant evidence she would have adduced and how she was prejudiced by the lack of a hearing because

---

[23]    *Id.* at 684.

[24]    *Id.*

she would have introduced or emphasized different evidence.[25]  Because Gail has failed

to do so here, we conclude that the superior court did not abuse its discretion in holding

Gail jointly and severally liable on the basis of her partnership with Delmer.[26]

**B.      The Superior Court Did Not Violate Gail's Due Process Rights When It Found Her Liable On The Basis Of Partnership Liability.**

In *Frost* we applied the abuse of discretion standard as a way of avoiding

the constitutional due process question.[27]  Because we found the superior court had

abused its discretion, we went no further.[28] But our determination that the superior court

did not abuse its discretion here requires that we consider the constitutional question Gail

raises.

---

[25]      We note that we did not specifically address the plausible showing requirement in *Bruce L. v. W.E.*, 247 P.3d 966, 977 (Alaska 2011).  In *Bruce L.*, however, the superior court's decision not to apply the Indian Child Welfare Act was premised on its determination that the child was not an "Indian Child," even though all of the parties had referred to the child as an Indian Child. *Id.* at 973-74.  It was obvious in that case that had any party been aware that the court considered the child's status at issue, it would have introduced additional evidence on that point.  There is no indication of such obvious evidence that Gail would have presented here.

[26]      We note that Gail argues that there is an inconsistency in finding that Gold Dust Mines, Inc. was the holdover tenant on the lease, even though the claims covered in the lease were actually being mined by the partnership. We do not find these propositions mutually exclusive on the facts of this case.

[27]      *Frost*, 218 P.3d at 682 ("In recognition of our practice of reaching constitutional issues only when a case cannot be fairly decided on other grounds, we resolve this case on abuse of discretion rather than due process grounds.").

[28]      *See id.* at 684.

Under our due process balancing test,[29] Gail's argument is unpersuasive. In performing this test we evaluate three considerations: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[30]

We recognize that the superior court's decision has the potential to negatively impact Gail's property rights and the burden on the government (here, the court system) — additional motion practice or evidentiary hearings — would not necessarily be substantial. But given Gail's affirmative representations regarding her partnership with Delmer and her failure to indicate what relevant evidence she might produce in a future hearing, the risk of an erroneous deprivation of her property interests is *de minimis* at best, and requiring additional proceedings has little, if any, probable value. Considering the facts and circumstances of this case, the superior court's procedure did not violate Gail's right to due process.

## V. CONCLUSION

We AFFIRM the superior court's order regarding Gail's liability for the reasons stated above.

---

[29] "The test for deprivations of procedural due process under both the Alaska Constitution and the United States Constitution is the test outlined in *Mathews v. Eldridge*." *Griswold v. City of Homer*, 252 P.3d 1020, 1029 (Alaska 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)).

[30] *In re Daniel G.*, 320 P.3d 262, 271 (Alaska 2014) (quoting *Mathews*, 424 U.S. at 334-35).