DILLINGHAM COMMERCIAL
COMPANY, INC., Appellant
and Cross-Appellee,

v.

CITY OF DILLINGHAM, Appellee and
Cross-Appellant.

Nos. S–317, S–348.

Supreme Court of Alaska.

Aug. 16, 1985.

Barry Donnellan, Fairbanks, for appellant and cross-appellee.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This is an appeal from an order of the superior court for the Third Judicial District establishing, in fee simple, two rights of way in favor of the City of Dillingham (the City) on property owned by Dillingham Commercial Company, Inc. (D.C. Co.).

### I.

The property (hereinafter Survey 2541) is located in downtown Dillingham. Dillingham Commercial Company, Inc. has operated a general store on Survey 2541 since the late 1920's. The City makes two claims to Survey 2541: the first is that there is a right of way that cuts across the northeast corner of Survey 2541 (road dispute), and the second is that the public alleys already existing on the north and east boundaries of the parcel should be widened to include portions of Survey 2541 (alley dispute).

Dillingham is located on the estuary of the Nushagak River. Survey 2541 is located on the estuary, in what now is the center of town. In the late 1920's, John W.

Felder and his partners built a general store and other buildings on Survey 2541. It was not until 1940, however, that Felder made a valid entry onto Survey 2541 under the homestead laws. In 1941, Survey 2541 was surveyed by the federal government, and in 1953, a patent over Survey 2541 was issued to John Felder.

Sometime in the early to mid-1930's, Felder constructed a dock of sorts on the tideland immediately south of Survey 2541. Much of the freight arriving in town was unloaded at this dock and transported to the town, first north over a public alley immediately bordering Survey 2541 on the east, and then northeast across a "road" running over the northeast corner of Survey 2541. In 1972, the City built a large public dock on the waterfront immediately east of Survey 2541. Most of the freight shipped to Dillingham arrives at this dock. It is transported into town by the same alleyway and road over Survey 2541.

On May 30, 1979, the City of Dillingham brought an action against D.C. Co. seeking title to the roadway. On July 19, 1979, the City brought a second action, seeking easements over strips of land on the north and east borders of Survey 2541, which were claimed to have been added to already existing alleys. The two actions were consolidated.

Judge Ripley entered partial summary judgment in favor of the City in the road dispute, holding that a public road of undetermined width existed on Survey 2541 on two alternative theories: (1) adverse possession, and (2) pursuant to 43 U.S.C. § 932. The determination of the width of the road was left for trial. Judge Moore entered a second summary judgment in favor of the City in the alley dispute on August 7, 1981. He determined that strips of land on Survey 2541 bordering the platted alleys were established in favor of the City on the same two theories. The determination of the width of the strips was also left for trial.

A trial was held before Judge Moore on the issue of the width of the road and the alley strips. Judge Moore determined that the road across Survey 2541 was sixteen feet wide, occupying approximately 2,592 square feet, and that the strips on the northeast corner of Survey 2541 occupied some 578 square feet of the property, coming within three feet of the building located on that corner. These findings have not been appealed.

In his judgment dated September 19, 1983, Judge Moore specified that the City's interest in the road across Survey 2541 was an estate in fee simple. The alley interest was not expressly characterized. Judge Moore further awarded the City $8,000 in attorney's fees.

D.C. Co. appeals, contending that the summary judgments that established the City's interest to the road and alleys on Survey 2541 were erroneously granted. The City cross-appeals, contending that the award of attorney's fees was so low as to constitute an abuse of discretion.

## II. 43 U.S.C. § 932

The superior court held that a public right of way over D.C. Co.'s property was established by 43 U.S.C. § 932. This provision, enacted in 1866, reads: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." It is applicable to Alaska lands. *Hamerly v. Denton,* 359 P.2d 121, 123 (Alaska 1961). Although § 932 was repealed in 1976 by Pub.L. No. 94–579, Title VII, § 706(a), 90 Stat. 2793, Oct. 21, 1976, it nevertheless governs here since the right of way claimed in this case would have existed at the date of repeal. Pub.L. No. 94–579, Title VII, 90 Stat. 2786, § 701(a).

The operation of § 932 is not obvious from its terms. Case law has made it clear that § 932 is one-half of a grant—an offer to dedicate. In order to complete the grant "there must be either some positive act on the part of the appropriate public authorities of the state, clearly manifesting an intention to accept a grant, or there must be public user for such a period of time and under such conditions as to prove

that the grant has been accepted." *Hamerly*, 359 P.2d at 123.

■ A preliminary argument by D.C. Co. is that Survey 2541 was not "public land" open to grant under § 932 because John Felder entered the land prior to use of Survey 2541 as a public way. It is clear that the public may not, pursuant to § 932, acquire a right of way over lands that have been validly entered:

> When a citizen has made a valid entry under the homestead laws, the portion covered by the entry is then segregated from the public domain. It has been appropriated to the use of the entryman, and until such time as the entry may be cancelled by the government or relinquished, the land is not included in grants made by Congress under 43 U.S. C.A. § 932. Consequently, a highway cannot be established under the statute during the time that the land is subject of a valid and existing homestead claim.

*Hamerly*, 359 P.2d at 123 (footnotes omitted). The question thus is whether Felder made a "valid entry under the homestead laws" before portions of Survey 2541 were used as a public highway.

■ Felder's first valid entry under the homestead law was made in 1940. D.C. Co. admits that until then Felder was only a squatter, but claims that the land was nevertheless withdrawn from the public domain.[1] We disagree with D.C. Co.'s conclusion. The *Hamerly* court explicitly required official action in order to withdraw lands from the public domain. In the paragraph quoted above, the court referred to entry *"under the homestead laws."* Accord *City of Miami v. Sirocco Co.*, 137 Fla. 434, 188 So. 344, 345–46 (1939). Therefore, Survey 2541 was public land (within the meaning of § 932) until 1940, and the § 932 grant could have been accepted by the public until that time.

## A. The Road Dispute

Having concluded that Survey 2541 was public land until 1940, the next question is whether the public's use of the road across the northeast corner prior to 1940 was "for such a period of time and under such conditions as to prove that the [§ 932] grant has been accepted." *Hamerly*, 359 P.2d at 123. One old timer who testified, Milo Adkinson, first came to Dillingham in 1925. He spoke of a trail to the beach that cut across Survey 2541, and testified that "it's right in the—roughly in the—same spot" now as it was in 1926. His testimony establishes that the road across Survey 2541 was used first for access to and from the beach, then later (in the late 30's) for hauling freight into town. Another long-time Dillingham resident, David Carlson, testified that ever since he arrived in Dillingham in 1936, the road was used by the public to haul freight to and from the beach. D.C. Co. did not produce any contrary evidence.

■ The superior court did not err by finding that no genuine issue of material fact existed as to the public's acceptance of the § 932 grant over the road prior to 1940. Summary judgment on this issue was properly granted.

■ D.C. Co. contends, however, that the route of the road across Survey 2541 was not definite enough to satisfy § 932. D.C. Co. asserts first that "a right of way created by public user pursuant to 43 U.S.C. § 932 connotes definite termini." We agree, but this does not change our conclusion. The road ran from Main Street on the north to the estuary on the south. This is not the sort of "dead end road or trail, running into wild, unenclosed and uncultivated country" that we held insufficient for the purposes of § 932 in *Hamerly*. 359 P.2d at 125. Rather, the road connects two essential transportation arteries.

D.C. Co. next contends that there was no evidence showing the specific location of

---

1. For support, D.C. Co. cites an early Alaska decision which held that a squatter has a paramount right to possession against all but the U.S. Government. *Bradford v. Danielsen*, 11 Alaska 406, 412–13 (1947).

the road across Survey 2541. This contention is incorrect—Milo Adkinson testified that its location both now and in the 1920's has essentially remained unchanged.

■ D.C. Co. further argues that even if a road has always been located on the northeast corner of Survey 2541, it is improper now to use that road for access to the City dock. We disagree. If there is a public road on Survey 2541, it may be used for any purpose consistent with public travel. *E.G., Albee v. Town of Yarro Point*, 74 Wash.2d 453, 445 P.2d 340, 344 (1968).

■ D.C. Co.'s final contention is that the superior court erred by awarding the road to the City in fee simple. Section 932 by its terms grants only a "right of way." The general rule is that the term "right of way" is synonymous with "easement." Thus, a right of way creates only a right of use. *See Wessells v. State Dept. of Highways*, 562 P.2d 1042, 1046 n. 5 (Alaska 1977). *Cf. Brice v. State, Div. of Forest, Land & Water Management*, 669 P.2d 1311, 1315 (Alaska 1983) (rights of way created by § 932 referred to as "easements"). If this was not the case, and the City did receive fee simple title to the road, then the City could use the land for any purpose, such as a park. We think that this result would be contrary to the intent and scope of § 932, which contemplates rights of ways *"for the construction of highways* over public lands." Thus, the superior court erred by granting to the City a fee simple interest in the road over Survey 2541.[2]

## B. *Alley Dispute*

■ In order to prevail on this issue, the City needed to show that the public used the alleys[3] before 1940 in such a way as to encroach on the north and east boundaries of Survey 2541. The testimony relied

on by the City for this point is inapposite because it refers to the 1940's, rather than pre-1940. Likewise, pictures submitted by the City clearly show worn paths very close to the house on the northeast corner of Survey 2541, but these pictures were taken in the mid or late 1950's. There simply was no evidence that would have allowed the superior court to conclude that before 1940 the public used the alleys in such a manner as to accept the § 932 grant. As such, the superior court's award of summary judgment in the alley dispute on the basis of § 932 was error.

## III. ADVERSE POSSESSION/ALLEY DISPUTE

■ At the outset, we note that the superior court made an error in nomenclature when it based its decision on the theory of adverse possession. The theory of adverse possession allows an individual to acquire title to property if he possesses the land adversely for the statutory period, which in Alaska is ten years.[4] AS 09.10.-030.

■ The theory of adverse possession is not applicable to the present case. Rather than seeking to *possess* the property, the City is seeking a right to *use* the road and alleys on Survey 2541. Since at most the public only *used* the property as a roadway, the City cannot establish the first element of an adverse possession claim: continuous and uninterrupted *possession. Bentley Family Trust v. Lynx Enterprises, Inc.*, 658 P.2d 761, 765 (Alaska 1983). This does not end the inquiry, however, because there are alternate theories, similar to adverse possession, which may be used to uphold the superior court's award of the alleyways to the City.

---

**2.** Because of our decision on the road dispute under § 932, any error committed by the superior court on the adverse possession or prescription theories was harmless.

**3.** The *existence* of the alleys along the north and east borders of Survey 2541 is not in dispute. Rather, the city is claiming that strips of Survey

2541 were added to the existing alleyways by virtue of 42 U.S.C. § 932.

**4.** The period is seven years when the claimant possesses the land under color of title. AS 09.-25.050; *Bentley Family Trust v. Lynx Enterprises, Inc.*, 658 P.2d 761, 764 (Alaska 1983).

■ It is clear that the right of the public to use land as a public highway may be acquired through public use. II *American Law of Property*, § 9.50, at 483 (J. Casner ed.1952). Two theories are most commonly used to establish such a right: prescription and implied dedication. Comment, *The Acquisition of Easements by the Public Through Use*, 16 S.D.L.Rev. 150, 150 (1971).

■ In order to establish a public road by implied dedication, two basic elements must be shown. First, there must be an intent to dedicate the road to the public, and second, there must be an acceptance of this offer. 6A R. Powell, *The Law of Real Property* ¶ 926 (1984). One seeking to establish a road on the theory of implied dedication must meet a high threshold of proof. In *Hamerly*, we stated:

> There is dedication when the owner of an interest in land transfers to the public a privilege of use of such interest for a public purpose. It is a question of fact whether there has been a dedication. This fact will not be presumed against the owner of the land; *the burden rests on the party relying on a dedication to establish it by proof that is clear and unequivocal.*
>
> . . . .
>
> Dedication is not an act or omission to assert a right; mere absence of objection is not sufficient. *Passive permission by the landowner is not in itself evidence of an intent to dedicate.* Intention must be clearly and unequivocally manifested by acts that are decisive in character.

359 P.2d at 125 (footnotes omitted) (emphasis added). Thus, evidence of public use without more is insufficient to prove dedication.

■ In the present case, the City did not come forward with any evidence indicating that D.C. Co. or its predecessors in interest intended to dedicate parts of Survey 2541 for a public road or alley. As such, the City could not prevail on this theory.

■ This leaves the doctrine of prescription. There is a split of authority as to whether a public highway may be created by prescription. A number of older cases hold that the public cannot acquire a road by prescription because the doctrine of prescription is based on the theory of a lost grant,[5] and such a grant cannot be made to a large and indefinite body such as the public. *See* II *American Law of Property* § 9.50 (J. Casner ed.1952). The lost grant theory, however, has been discarded. W. Burby, *Real Property* § 31, at 77 (1965). In its place, courts have resorted to the justifications that underlie statutes of limitations: "[The] functional utility in helping to cause prompt termination of controversies before the possible loss of evidence and in stabilizing long continued property uses." 3 R. Powell, *supra* note 5, ¶ 413, at 34–103–04; W. Burby, *supra*, § 31, at 77; Restatement of Property ch. 38, Introductory Note, at 2923 (1944). These reasons apply equally to the acquisition of prescriptive easements by public use. The majority view now is that a public easement may be acquired by prescription. 2 J. Grimes, *Thompson on Real Property* § 342, at 209 (1980). We impliedly joined this majority in *Hamerly* and do so explicitly now.

The requirements for establishing a public easement by prescription are nearly identical to the requirements of adverse possession, and the string of adjectives used to describe prescription have a familiar ring: the use must be open, notorious, adverse, hostile, and continuous. *See* W. Burby, *supra*, § 31, at 76–77. These general requirements have been reduced to a simple statement by this court in the adverse possession context: "(1) the possession must have been continuous and uninterrupted; (2) the possessor must have acted as if he were the owner and not merely one acting with the permission of the own-

---

**5.** This fiction is a conceptual basis for prescription. After adverse use for the statutory period, the law will presume that the use of the land was made pursuant to a grant which has since been lost. 3 R. Powell, *The Law of Real Property* ¶ 413, at 34–103 n. 3.

er; and (3) the possession must have been reasonably visible to the record owner." *Alaska National Bank v. Linck,* 559 P.2d 1049, 1052 (Alaska 1977). *See also* Restatement of Property § 457 (1944).

■■■ In order to prove that use was adverse, the party seeking an easement by prescription must overcome the presumption that the use was permissive. In *Hamerly,* this court stated:

> Use alone for the statutory period—even with the knowledge of the owner—would not establish an easement. When one enters into possession or use of another's property, there is a presumption that he does so with the owner's permission and in subordination to his title. *This presumption is overcome only by showing that such use of another's land was not only continuous and uninterrupted, but was openly adverse to the owner's interest, i.e., by proof of a distinct and positive assertion of a right hostile to the owner of the property.*

359 P.2d at 126 (footnotes omitted) (emphasis added).

■■■ We find that a triable issue of fact exists on the question of whether the public use of the portions of the alleyways abutting Survey 2541 was permissive or adverse. Since its occupation in the 1920's, Survey 2541 has always contained public businesses. A reasonable inference is that the public used the alleys on the north and east borders of Survey 2541 in conjunction with conducting business at either the general store or (later) at the Sea Inn Bar, or both. Indeed, a review of the aerial photographs taken of Dillingham in the mid to late 1950's shows that there was a circular driveway around the house on the northeast corner of Survey 2541, and that the entrance to the general store faced this driveway. If the public did use these alleys in conjunction with business at the store, then use of the portions of Survey 2541 adjoining the public alleys would have been with permission. This theory, together with the presumption of permissiveness, leads us to conclude that the issue of whether a prescriptive easement was created by public use should have been submitted to a factfinder. As such, summary judgment was inappropriate.[6]

## IV. CROSS-APPEAL/ATTORNEY'S FEES

■■■ The City appealed the superior court's award of $8,000 in attorney's fees, contending that this was too low in light of the fact that it actually expended $28,483. When reviewing an award of attorney's fees made pursuant to Rule 82(a)(1),[7] our inquiry is whether the superior court's award was manifestly unreasonable. *Haskins v. Shelden,* 558 P.2d 487, 495 (Alaska 1976). Although we believe that the award was not unreasonable, the judgment for attorney's fees must be vacated, as part of the judgment on which it is based has been reversed.

As to the road dispute, the judgment shall be modified to reflect that the road is an easement. As modified the judgment is AFFIRMED. As to the alley dispute, the judgment is REVERSED and the case is REMANDED for further proceedings. The award of attorney's fees is VACATED.

MOORE, J., not participating.

---

**6.** On remand, the superior court should note that if a public highway was established by prescription, the appropriate interest created would be an easement, and not fee simple absolute.

**7.** Civil Rule 82(a)(1) provides in relevant part:
Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court in its discretion in a reasonable amount.