*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| AHTNA, INC., <br><br>           Appellant and <br>           Cross-Appellee, <br><br>     v. <br><br>STATE OF ALASKA, DEPARTMENT OF NATURAL RESOURCES and DEPARTMENT OF TRANSPORTATION & PUBLIC FACILITIES, <br><br>           Appellees and <br>           Cross-Appellants. | Supreme Court Nos. S-17496/17526/ 17605 (Consolidated) <br><br> Superior Court No. 3AN-08-06337 CI <br><br> O P I N I O N <br><br> No. 7619 – September 16, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Matthew Singer and Peter A. Scully, Holland & Knight LLP, Anchorage, for Appellant/Cross-Appellee. Jessica M. Alloway, and Max D. Garner, Assistant Attorneys General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellees/Cross-Appellants.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

CARNEY, Justice.

## I. INTRODUCTION

The State claimed the right under Revised Statute 2477 (RS 2477) to clear land and permit the use of boat launches, camping sites, and day use sites within an alleged 100-foot right of way centered on a road on land belonging to an Alaska Native corporation. The Native corporation sued, arguing that its prior aboriginal title prevented the federal government from conveying a right of way to the State or, alternatively, if the right of way existed, that construction of boat launches, camping sites, and day use sites exceeded its scope.

After years of litigation and motion practice the superior court issued two partial summary judgment orders. It held as a matter of law that any preexisting aboriginal title did not disturb the State's right of way over the land. It also concluded as a matter of law that the right of way was limited to ingress and egress. Because the superior court did not err when it granted the State's motion regarding aboriginal title, we affirm that grant of partial summary judgment. But because the scope of a particular RS 2477 right of way is a question of fact, we reverse its conclusion as a matter of law that the State's right of way is limited to ingress and egress.

## II. FACTS AND PROCEEDINGS

### A. The Dispute

Klutina Lake Road, known locally as the Brenwick-Craig Road, is a single-lane dirt road running approximately 25 miles along the Klutina River from Copper Center on the Richardson Highway to the outlet of Klutina Lake. Much of the road travels over land owned by Ahtna, Inc., the regional Alaska Native corporation.[1] The Ahtna Athabascan people have used and occupied the land for hundreds of years.

---

[1] The road also travels over land referred to as Lot 3 and owned by a number of private landowners. While those property owners are parties to the underlying dispute, they are not involved in this appeal.

In 2007 the State cleared a swath of land along the road and removed one of the "permit fee stations" Ahtna had erected to collect fees for use of its land. The State claimed that it had established a 100-foot wide RS 2477 right of way for the cleared land "as early as 1899" and then again in the 1960s when the State "constructed a more official road." The State claimed its RS 2477 right of way included a broad scope of activities, such as day use, camping, boat launching, parking, and fishing, as well as the right to travel over the road.

Ahtna objected to the State's land clearing and destruction of Ahtna's property. It disputed the existence and width of any State right of way, and it argued that any right of way that might exist permitted only ingress and egress. In early 2008 Ahtna filed a complaint for declaratory judgment and an injunction regarding the State's alleged trespass on its land. Years of litigation ensued, culminating in the current appeal.

### B. Statutory Background

Congress enacted RS 2477 in 1866 as part of the Lode Mining Act.[2] RS 2477 stated in its entirety: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."[3] The federal government's grant of rights of way under RS 2477 "was self-executing, meaning that an RS 2477 right-of-way automatically came into existence 'if a public highway was established across public land in accordance with the law of Alaska.' "[4]

---

[2]    Lode Mining Act of 1866, ch. 262, § 8, 14 Stat. 251, 253 (codified as 43 U.S.C. § 932, Revised Statute 2477), *repealed by* Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 706(a), 90 Stat. 2743, 2793 (1976).

[3]    43 U.S.C. § 932 (repealed 1976).

[4]    *Price v. Eastham*, 75 P.3d 1051, 1055 (Alaska 2003) (quoting *Fitzgerald v. Puddicombe*, 918 P.2d 1017, 1019 (Alaska 1996)).

Congress repealed RS 2477 in 1976 but left existing rights of way intact.[5] In Alaska, however, authorization for RS 2477 rights of way ended no later than January 1969, when the Secretary of the Interior withdrew all public lands not already reserved.[6] Because the statute was self-executing and did not require rights of way to be recorded, the existence of an RS 2477 right of way is frequently a matter of controversy.[7]

When determining the existence and scope of an RS 2477 right of way over Native corporation land, courts must also be mindful of the Alaska Native Claims Settlement Act (ANCSA).[8] Congress enacted ANCSA in 1971 "to settle all land claims

---

[5]     Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 701, 706, 90 Stat. 2743, 2786, 2793 (1976) ("Nothing in this Act, or in any amendment made by this Act, shall be construed as terminating any valid . . . right-of-way . . . existing on the date of approval of this Act."); *Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1083 (Alaska 2018).

[6]     Public Land Order (PLO) 4582, 34 Fed. Reg. 1025 (Jan. 17, 1969). The parties have both cited January 17, 1969, the date Secretary Udall signed PLO 4582, as the date lands were withdrawn. Other sources suggest that the withdrawal was instead effective on December 14, 1968, the date the notice of application for withdrawal was published. *See Betty J. (Thompson) Bonin*, 151 IBLA 16, 26 n.8 (1999) (describing December 13 as "the earliest date which would not run into the controversy as to when the lands affected by PLO 4582 had been removed from entry and location"); Notice of Application for Withdrawal of Unreserved Lands, 33 Fed. Reg. 18591 (Dec. 14, 1968). Because the parties agree that withdrawal was effective as of January 1969, and because this case does not require us to determine whether withdrawal was effective sooner, we do not decide whether withdrawal was effective earlier than January 1969.

[7]     *See S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 742 (10th Cir. 2005), *as amended on denial of reh'g* (Jan. 6, 2006) ("[T]he definition of R.S. 2477 rights of way across federal land, which used to be a non-issue, has become a flash point, and litigants are driven to the historical archives for documentation of matters no one had reason to document at the time.").

[8]     43 U.S.C. §§ 1601-1642.

by Alaska Natives."[9] ANCSA "extinguished all claims of the Native people of Alaska based on aboriginal title in exchange for 962.5 million dollars and 44 million acres of public land."[10] Section 4 of ANCSA addresses aboriginal title:

**(a) Aboriginal title extinguishment through prior land and water area conveyances**

All prior conveyances of public land and water areas in Alaska, or any interest therein, pursuant to Federal law, and all tentative approvals pursuant to section 6(g) of the Alaska Statehood Act, shall be regarded as an extinguishment of the aboriginal title thereto, if any.

**(b) Aboriginal title and claim extinguishment where based on use and occupancy; submerged lands underneath inland and offshore water areas and hunting or fishing rights included**

All aboriginal titles, if any, and claims of aboriginal title in Alaska based on use and occupancy, including submerged land underneath all water areas, both inland and offshore, and including any aboriginal hunting or fishing rights that may exist, are hereby extinguished.

**(c) Aboriginal claim extinguishment where based on right, title, use, or occupancy of land or water areas; domestic statute or treaty relating to use and occupancy; or foreign laws; pending claims**

All claims against the United States, the State, and all other persons that are based on claims of aboriginal right, title, use, or occupancy of land or water areas in Alaska, or that are based on any statute or treaty of the United States relating to Native use and occupancy, or that are based on the laws of any other nation, including any such claims that are pending

---

[9]     *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 523 (1998).

[10]     *Kenai Peninsula Borough v. Cook Inlet Region, Inc.*, 807 P.2d 487, 490 (Alaska 1991).

before any Federal or state court or the Indian Claims Commission, are hereby extinguished.[11]

### C.    Proceedings

Ahtna's 2008 lawsuit sought a declaration that the land in question was "free and clear of an RS 2477 [right of way]" and an injunction to prevent the State from "further trespass upon Ahtna's lands." Ahtna acknowledged that the United States had a 60-foot-wide easement allowing public travel on the road, but argued that the State did not have an additional 100-foot-wide RS 2477 right of way. The State counterclaimed, seeking to quiet title to the claimed right of way and arguing that its RS 2477 right of way was superior to the federal one. The parties repeatedly postponed trial in the hope of reaching a settlement. In 2014 Ahtna filed a second amended complaint, which forms the basis for the present litigation.

In 2016 Ahtna moved for partial summary judgment, seeking a declaration that RS 2477 rights of way permit only ingress and egress. The State opposed. In May 2016 the superior court granted the motion. The court determined that "RS 2477, which granted rights-of-way for 'highways over public lands,' conveyed the right to pass over the land, and nothing more."

Ahtna separately moved for summary judgment "to establish that there is no RS 2477 right-of-way along the Klutina Lake Road" because then-existing aboriginal title prevented conveyance of an RS 2477 right of way. The State opposed. In June 2018 the superior court denied Ahtna's motion for summary judgment based on aboriginal title. The court assumed without deciding that "aboriginal title land was not public land before Congress enacted ANCSA and Ahtna possessed aboriginal title to the

---

[11]    43 U.S.C. § 1603.

land at issue."[12]  It then concluded that ANCSA applied retroactively and that ANCSA extinguished Ahtna's aboriginal title.

The parties eventually stipulated to entry of final judgment under Alaska Civil Rule 54(b).  Ahtna stipulated to the existence of a 100-foot RS 2477 right of way, "50 feet on each side of the centerline of the current location of Klutina Lake Road," and two additional 100-foot RS 2477 rights of way between the Klutina Lake Road and Klutina River, subject to its right to appeal on the basis of aboriginal title.  Both parties dismissed claims, some with prejudice and some without prejudice.  However, the parties "agree[d] to preserve the right to appeal legal issues already decided . . . on motions for summary judgment."

Ahtna appeals the superior court's denial of summary judgment concerning aboriginal title.  Ahtna also requests that we confirm the court's assumption "that the Ahtna Athabascan people held aboriginal title to the Klutina River Valley."  The State cross-appeals the court's partial summary judgment order declaring that any right of way pursuant to RS 2477 is limited to the right of ingress and egress.

## III.   STANDARD OF REVIEW

"We review grants of summary judgment de novo."[13]  "We review a court's interpretation of statutes de novo and 'apply our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.' "[14]

---

[12]     This preliminary assumption that the land was not public was significant because RS 2477 stated:  "The right of way for the construction of highways over *public lands*, not reserved for public uses, is hereby granted." 43 U.S.C. § 932 (emphasis added) (repealed 1976).

[13]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 516 (Alaska 2014).

[14]     *Ruerup v. Ruerup*, 408 P.3d 1203, 1206 (Alaska 2018) (quoting *Stephanie* (continued...)

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Denying Ahtna's Motion For Summary Judgment Based On Aboriginal Title.

#### 1. We need not decide whether the land at issue was public or non-public as a matter of law.

The superior court narrowed the issues by assuming without deciding that "aboriginal title land was not public land before Congress enacted ANCSA and Ahtna possessed aboriginal title to the land at issue." On appeal Ahtna urges us to confirm the superior court's assumption and explicitly hold that Ahtna possessed aboriginal title to the land surrounding Klutina Lake Road prior to the passage of ANCSA. But such a determination is not necessary. As discussed below, even if Ahtna did possess aboriginal title prior to ANCSA, passage of the statute retroactively validated the RS 2477 right of way. We therefore decline to decide the issue.[15] Like the superior court, we assume without deciding that Ahtna possessed aboriginal title to the land surrounding Klutina Lake Road prior to the passage of ANCSA.

#### 2. The superior court's decision that ANCSA precluded Ahtna's aboriginal title arguments is consistent with precedent.

The superior court held that aboriginal title did not prevent an RS 2477 right of way because ANCSA § 4(a) "extinguished aboriginal title as a defense to pre-

---

[14] (...continued)
*F. v. George C.*, 270 P.3d 737, 746 (Alaska 2012)).

[15] *See Paug-Vik, Inc. v. Wards Cove Packing Co.*, 633 P.2d 1015, 1018 (Alaska 1981) (affirming trial court's decision without deciding preliminary issue when trial court found it "unnecessary to reach the complex issues of whether aboriginal title ever existed in Alaska, what criteria must be met in order to acquire aboriginal title, whether the Natives of Naknek in fact met those criteria and whether any title they might have acquired was abandoned"); *United States v. Atl. Richfield Co.*, 612 F.2d 1132, 1134 (9th Cir. 1980) ("For the purposes of this appeal, we assume that the Inupiats retained unrecognized aboriginal title to the North Slope until 1971.").

ANCSA conveyances of federal land encumbered by aboriginal title at the time of conveyance." Ahtna does not claim that it still possesses aboriginal title over the land surrounding Klutina Lake Road. Instead, it argues that because it *had* aboriginal title when the federal government was offering RS 2477 rights of way, the land was not "public land" under RS 2477 and was therefore not eligible for an RS 2477 conveyance. Ahtna argues that because the land was never eligible under RS 2477, there was no conveyance, and ANCSA could not have validated a conveyance that did not occur.

Ahtna also claims that its argument is not precluded by ANCSA § 4(c), which extinguishes "[a]ll claims . . . based on claims of aboriginal right, title, use, or occupancy of land or water areas in Alaska."[16] According to Ahtna, § 4(c) precludes only claims, not defenses.

But we have previously rejected the same arguments. "The stare decisis doctrine rests on a solid bedrock of practicality: 'no judicial system could do society's work if it eyed each issue afresh in every case that raised it.' "[17] Because this case is not distinguishable from our prior cases addressing the same issues, we affirm the superior court's order denying Ahtna's motion for summary judgment based on aboriginal title.

### a. Section 4(a) of ANCSA validated the RS 2477 right of way.

Assuming aboriginal title prevented a conveyance of a valid RS 2477 right of way for Klutina Lake Road, the first issue is whether Section 4(a) of ANCSA retroactively validated the RS 2477 right of way. Section 4(a) of ANCSA states: "All prior conveyances of public land and water areas in Alaska, or any interest therein,

---

[16]    43 U.S.C. § 1603(c).

[17]    *Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937, 943 (Alaska 2004) (quoting *Pratt & Whitney Canada, Inc. v. United Techs.*, 852 P.2d 1173, 1175 (Alaska 1993)).

pursuant to Federal law, and all tentative approvals pursuant to section 6(g) of the Alaska Statehood Act, shall be regarded as an extinguishment of the aboriginal title thereto, if any."[18]

Ahtna argues that Section 4(a) did not validate the conveyance of an RS 2477 right of way for Klutina Lake Road because aboriginal title prevented such a conveyance from occurring in the first place. The question of whether ANCSA validated conveyances that would otherwise be barred by aboriginal title has already been answered in *Paug-Vik, Inc. v. Wards Cove Packing Co.*[19] In *Paug-Vik* a cannery sought and was granted a declaration confirming its right to use water from Seagull Lake.[20] Wards Cove Packing Company claimed that the 1930 appropriation of water by its predecessor in interest entitled it to water rights under 43 U.S.C. § 661.[21] Paug-Vik, Inc., the local Native corporation, protested the appropriation, arguing that "prior to ANCSA's passage in 1971 Seagull Lake was used or occupied by the Natives of Naknek, thus conferring 'aboriginal title' on them and rendering the lake unavailable for appropriation by non-natives."[22] When the appropriation was nonetheless granted, Paug-Vik appealed.[23]

We started our analysis in *Paug-Vik* by observing that "Congress has settled the question of whether conveyances of aboriginal title land under the federal public land

---

[18]   43 U.S.C. § 1603(a).

[19]   633 P.2d 1015 (Alaska 1981).

[20]   *Id.* at 1016.

[21]   *Id.*; *see* 43 U.S.C. § 661 (concerning recognition of water rights).

[22]   *Paug-Vik*, 633 P.2d at 1017.

[23]   *Id.*

laws are valid" because "Congress has declared in § 1603(a) of ANCSA that such conveyances are effective."[24]  After holding that water appropriation rights were conveyances covered by ANCSA, we concluded that such conveyances "therefore must be regarded as *extinguishing aboriginal title to the same interest.*"[25]  We emphasized that our interpretation of ANCSA was consistent with ANCSA's purpose, "which is that the extinguishment provisions of that section should be construed broadly to eliminate every claim resting on the assertion of aboriginal title."[26]  Our decision in *Paug-Vik* is directly applicable to this case.

Ahtna attempts to distinguish *Paug-Vik* by arguing that *Paug-Vik* addressed different statutory language and answered a different question by focusing on "the nature of the right acquired by an appropriation of water."  But Ahtna ignores *Paug-Vik*'s key holdings.  While the main issue in *Paug-Vik* was whether the appropriation of water rights fell under the umbrella of § 1603(a) conveyances,[27] we also held that conveyances extinguish aboriginal title under ANCSA § 4(a).[28]

Ahtna's attempt to distinguish the relevant statutory language is not persuasive.  The statute at issue in *Paug-Vik* conveyed a right to water appropriation "[w]henever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued."[29]  There is no reason

---

[24]    *Id.* at 1018.

[25]    *Id.* at 1020 (emphasis added).

[26]    *Id.*

[27]    *Id.* at 1018-19.

[28]    *Id.* at 1020.

[29]    43 U.S.C. § 661; *see Paug-Vik*, 633 P.2d at 1017.

Ahtna's theory — that aboriginal title meant there was no conveyance rather than an invalid conveyance curable by ANCSA — would not have applied in *Paug-Vik*. If that theory were correct, no conveyance could have occurred in *Paug-Vik* because aboriginal title would have prevented water rights from accruing in the first place. As the superior court observed, Ahtna's reading of ANCSA § 4(a) "would only extinguish aboriginal title on land that was *not* encumbered by aboriginal title. Or, in other words, it would do nothing."

Federal cases interpreting ANCSA also support the superior court's holding. In *United States v. Atlantic Richfield Co.* the Ninth Circuit addressed trespass claims based on aboriginal title.[30] The Ninth Circuit held that ANCSA applied retroactively and "extinguished not only the aboriginal titles of all Alaska Natives, but also every claim 'based on' aboriginal title in the sense that the *past or present existence* of aboriginal title is an element of the claim."[31] In *Edwardsen v. Morton* a federal district court rejected a challenge to pre-ANCSA conveyances despite recognizing that the conveyances were "void when granted."[32] As the court explained, "Congress could constitutionally, and did in effect, give the State good title . . . . by removing the only impediment to the validity of the approvals rather than by making a new conveyance of title."[33] Because its decision was mandated by precedent, the superior court did not err when it decided that ANCSA § 4(a) retroactively validated the conveyance of an RS 2477 right of way for Klutina Lake Road.

---

[30]  612 F.2d 1132, 1134 (9th Cir. 1980).

[31]  *Id.* at 1134 (emphasis added).

[32]  369 F. Supp. 1359, 1377 (D.D.C. 1973).

[33]  *Id.* at 1378.

### b. ANCSA does not distinguish between claims and defenses.

Ahtna attempts to distinguish these earlier cases by arguing that ANCSA's language applies only to affirmative claims, not defenses.[34] Ahtna points out that ANCSA § 4(c) refers to "claims" but argues that "[n]o court has ever held that § 4(c) precludes a litigant from *defending* against an RS 2477 claim on the basis of . . . then-unextinguished aboriginal title." But Paug-Vik made just such an argument when it used aboriginal title as a defense to a pre-ANCSA conveyance.[35] As the superior court noted, "[t]here is no meaningful distinction between the circumstances in *Paug-Vik* and this case."

Ahtna supports its theory by citing *Edwardsen*, in which the court differentiated between "challenges to the validity of certain titles to land" and "claims for compensation for alleged trespasses."[36] While it is true that *Edwardsen* interpreted ANCSA's extinguishment of claims more narrowly than *Atlantic Richfield*, *Edwardsen* did not distinguish between defensive claims and affirmative claims. Instead, the *Edwardsen* court distinguished between trespass claims and claims based on the loss of

---

[34] Even if we accepted Ahtna's argument that ANCSA should be read to extinguish only affirmative claims and not defenses, that argument would apply only to § 4(b) and § 4(c) of ANCSA. Section 4(a) of ANCSA, through which prior conveyances are "regarded as an extinguishment of aboriginal title," does not refer to "claims" at all. That section would still validate the State's RS 2477 right of way regardless of whether § 4(c) applied to defenses.

[35] *Paug-Vik, Inc. v. Wards Cove Packing Co.*, 633 P.2d 1015, 1017 (Alaska 1981).

[36] 369 F. Supp. at 1365.

aboriginal title.[37]  It *rejected* claims invoking aboriginal title to invalidate a conveyance.[38]  Thus, even the *Edwardsen* court's narrower interpretation of ANCSA would not support Ahtna's theory.  Because Ahtna's argument that ANCSA extinguishes only affirmative claims has no support in the statute or precedent, the superior court did not err in rejecting that argument.

**B.      It Was Error To Conclude As A Matter Of Law That The Klutina Lake Road RS 2477 Right Of Way Was Limited To Ingress And Egress.**

The State cross-appeals, arguing that the superior court erred when it held the RS 2477 right of way is inherently "limited to ingress and egress, and cannot, as a matter of law, accommodate activities associated with travel in Alaska such as boat launching, camping, parking, and day use."  We agree in part:  RS 2477 rights of way are limited to highway purposes, which are broader in scope than mere "ingress and egress" but narrower in scope than the State advocates.  Because the superior court took such a narrow view of the RS 2477 right of way's scope as a matter of law without actually considering the factual underpinning of each use the State proposed, we remand for further proceedings about specific uses consistent with the following discussion of relevant law.

RS 2477 was self-executing; a "right-of-way automatically came into existence 'if a public highway was established across public land in accordance with' "

---

[37]      *Id.* at 1379.

[38]      *Id.* at 1378 ("In [passing ANCSA], Congress fully intended that there should be no further 'cloud' on land titles in Alaska stemming from aboriginal land claims, and that legal challenges to title based on such claims should be barred.").

state law.[39] Alaska law recognizes RS 2477 rights of way through two means: "the public must use the land 'for such a period of time and under such conditions as to prove that the grant has been accepted,' or appropriate public authorities of the state must act in a way that clearly manifests their intention to accept the grant."[40] After considerable litigation the parties in this case stipulated that the Klutina Lake Road is a 100-foot wide RS 2477 right of way centered on the roadway.

RS 2477 rights of way are limited in scope.[41] The full text of the statute stated: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."[42] "Highways" granted by RS 2477 are rights of ways synonymous with easements, not fee simple interests, and therefore create only a right of use.[43] Subject to the limitations inherent in the federal grant of a highway

---

[39]     *Price v. Eastham*, 75 P.3d 1051, 1055 (quoting *Fitzgerald v. Puddicombe*, 918 P.2d 1017, 1019 (Alaska 1996)); *see also Sierra Club v. Hodel*, 848 F.2d 1068, 1078, 1080 (10th Cir. 1988) (affording "great weight" to agency interpretation of RS 2477, after agency deferred to "State law specifying widths of public highways within the State . . . to determine the width of the RS 2477 grant"), *overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

[40]     *Dickson v. State, Dep't of Nat. Res.*, 433 P.3d 1075, 1083 (Alaska 2018) (alteration in original) (quoting *Price*, 75 P.3d at 1055).

[41]     "The 'scope' of a right-of-way refers to the bundle of property rights possessed by the holder of the right-of-way. This bundle is defined by the physical boundaries of the right-of-way as well as the uses to which it has been put." *Sierra Club*, 848 F.2d at 1079 n.9. An easement holder's use of the easement is also limited by the terms of the easement. RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.10 at 592 (AM. L. INST. 1998).

[42]     43 U.S.C. § 932 (repealed 1976).

[43]     *Dillingham Com. Co. v. City of Dillingham*, 705 P.2d 410, 415 (Alaska (continued...)

-15-                                                                                7619

easement, the scope of the easement's use is defined by, and occasionally limited by, state law.[44] The relevant state law is the law in effect when the offer of RS 2477 grants was withdrawn — not contemporary highway laws and regulations.[45] Federal Public Land Order 4582 withdrew public lands in Alaska and prevented the establishment of new or expanded RS 2477 rights of way after January 17, 1969.[46] Congress then preserved existing rights of way when it repealed RS 2477 on October 21, 1976.[47] The scope of RS 2477 highway easements in Alaska therefore had to be established by

---

[43] (...continued)
1985) (stating, with reference to RS 2477 right of way grants, that the public road "may be used for any purpose consistent with public travel" (citation omitted), but that: "The general rule is that the term 'right of way' is synonymous with 'easement.' Thus, a right of way creates only a right of use." (quoting *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1046 n.5 (Alaska 1977))).

[44] *See S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 768 (10th Cir. 2005) ("We therefore conclude that federal law governs the interpretation of R.S. 2477, but that in determining what is required for acceptance of a right of way under the statute, federal law 'borrows' from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating congressional intent.").

[45] *Id.* at 741 ("[E]ven as Congress repealed R.S. 2477, it specified that any 'valid' R.S. 2477 rights of way 'existing on the date of approval of this Act' (October 21, 1976) would continue in effect. The statute thus had the effect of 'freezing' R.S. 2477 rights as they were in 1976." (citations omitted)).

[46] PLO 4582, 34 Fed. Reg. 1025 (Jan. 17, 1969); *see Doyon, Ltd.*, 181 IBLA 148, 155 n.7 (May 31, 2011) ("We know that PLO 4582 precluded establishment of R.S. 2477 [rights of way] because it was subsequently amended by PLO 4676 to specifically allow for the establishment of an R.S. 2477 [right of way] from Livengood to the Yukon River.").

[47] *See S. Utah Wilderness All.*, 425 F.3d at 741 (noting repeal statute froze RS 2477 rights of way as of 1976).

January 17, 1969.[48] In 1969 former AS 19.05.130(8) defined "highway" to include "a highway (whether included in primary or secondary systems), road, street, trail, walk, bridge, tunnel, drainage structure and other similar or related structure or facility, and right-of-way thereof, . . . whether operated solely inside the state or to connect with a Canadian highway, and any such related facility."[49]

Although RS 2477 rights of way tend to be liberally construed such that "[w]hatever may be construed as a highway under State law is a highway under [RS 2477]," state law does not "override federal requirements or undermine federal land policy."[50] For example, the Ninth Circuit Court of Appeals held that even though "Montana law in 1901 [allegedly] recognized a right to run utilities along a highway right of way, . . . Congress had adopted a federal rule that power transmission is not within the scope of an R.S. 2477 highway right of way and had excluded any implied

---

[48] We reject the State's arguments that the scope of highway-related activities reflected in current statutes and regulations is relevant to its dispute with Ahtna.

[49] Former AS 19.05.130(8) (1962); former AS 19.45.001(8) (1981) (indicating section renumbered but language unchanged); *see also* former 13 Alaska Administrative Code (AAC) 300(a)(6) (1959) (" 'Highway' means a public highway heretofore or hereafter established as a public way by Acts of Congress or of the Territorial or State Legislatures, or by the construction or adoption thereof for public purposes by any public body or agency, or any route or vehicular travel in continuous use by the public for the statutory period required to vest prescriptive ownership thereof in the public as a general body; and all such public ways expressly adopted by the Division."); former 13 AAC 101.214 (1966) (defining "[h]ighway" as "[t]he entire width between property lines of every way or place of whatever nature when any part thereof is open to the public, as a matter of right, for purposes of vehicular traffic").

[50] *S. Utah Wilderness All.*, 425 F.3d at 766 (alteration in original) (quoting *Limitation of Access to Through-Highways Crossing Pub. Lands*, Solicitor's M-Op. M-36274, 62 I.D. 158, 161 (1955)); *see also Humboldt County v. United States*, 684 F.2d 1276, 1280 (9th Cir. 1982) ("Any doubt as to the extent of the [RS 2477] grant must be resolved in the government's favor.").

borrowing of state law on this point."[51]   And the Tenth Circuit Court of Appeals has similarly recognized "that R.S. 2477 rights of way are limited to highway purposes, and do not encompass ancillary uses such as utility lines, notwithstanding state law to the contrary."[52]   We have previously construed RS 2477 grants to permit "only a right of use" as a right of way, not the construction of ancillary facilities such as a park.[53]

The legal concepts of "right of way" and "highway" in 1969 similarly suggest a relatively narrow scope for RS 2477 rights of way.  Black's Law Dictionary defined "right of way" as "a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, or horseback, or in a vehicle, to drive beasts of burden or carts, through the estate of another."[54]   A "highway" was defined as

> [a]n easement acquired by the public in the use of a road or way for thoroughfare.  A free and public roadway, or street; one which every person has the right to use.  Its prime essentials are the right of common enjoyment on the one hand

---

[51]   *United States v. Gates of the Mountains Lakeshore Homes, Inc.*, 732 F.2d 1411, 1413 (9th Cir. 1984); *cf. United States v. Okla. Gas & Elec. Co.*, 318 U.S. 206 (1943) (holding scope of federal right of way, granted under federal law specifically incorporating state law, included transmission lines in accordance with state law), discussed in *Mountains Lakeshore Homes*, 732 F.2d at 1414.

[52]   *S. Utah Wilderness All.*, 425 F.3d at 766 (referencing 1974 Bureau of Land Management regulation). *But cf. Fisher v. Golden Valley Elec. Ass'n*, 658 P.2d 127, 130 & n.9 (Alaska 1983) (holding, expressly based on easement case law not pertaining to RS 2477 rights of way due to inadequate briefing, that utility could construct power lines on RS 2477 easement). The continued vitality of *Fisher* is not before us in this case.

[53]   *Dillingham Com. Co. v. City of Dillingham*, 705 P.2d 410, 415 (Alaska 1985).

[54]   *Right Of Way*, BLACK'S LAW DICTIONARY (4th ed. 1968).

and the duty of public maintenance on the other.[55] Black's Law Dictionary also listed examples of highways: "carriage-ways, bridle-ways, foot-ways, bridges, turnpike roads, railroads, canals, ferries or navigable rivers."[56]

The State urges us, based on *Dillingham Commercial Co. v. City of Dillingham*, to hold that RS 2477 rights of way include any use "consistent with public travel," including boat launches, camping, and day use. The State's quotation is correct, but *Dillingham* merely permitted an existing RS 2477 right of way across the servient estate to a beach for cargo loading to include access to a new loading dock that did not exist when the right of way was established and was not located on the servient estate; it does not support expanding the right of way's scope to include uses other than travel-related activities.[57] In *Dillingham* we explicitly rejected the argument that an RS 2477 right of way allowed the government to "use the land for any purpose, such as a park."[58] And although the State is correct that in *Dickson v. State, Department of Natural Resources* we disavowed any notion that historic use is relevant once an RS 2477 right of way is established, we did not address whether the right of way's scope included uses inconsistent with relevant definitions of "highway."[59]

Akin to typical right of way easements, where the holder is limited to reasonable use of the easement, the holder of an RS 2477 right of way is "authorized to

---

[55] *Highway*, BLACK'S LAW DICTIONARY (4th ed. 1968) (citations omitted).

[56] *Id.*

[57] 705 P.2d at 414-15.

[58] *Id.*

[59] 433 P.3d 1075, 1084-85 (Alaska 2018) (affirming that RS 2477 right of way previously primarily used as part of historic Iditarod trail was not limited to winter use or dog-mushing but could "be used for any purpose consistent with public travel" (quoting *Dillingham*, 705 P.2d at 415)).

make any use . . . reasonably necessary for the convenient enjoyment of the easement"[60] subject to the terms and "purposes for which the servitude was created."[61] The State may maintain and modernize the road, but any expansions must be consistent with the scope of the federally granted right of way: as a highway defined and limited by relevant state law.[62] For example, we recently affirmed a superior court's determination that maintenance activities — such as "grading and compacting the road and plowing snow and other debris off the side of the road" — which caused an "[i]ncidental widening" of a right of way easement did not constitute unreasonable interference with the servient estate despite damage to the bordering "trees and brush."[63]

---

[60]   RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.10 cmt. c, at 593 (AM. L. INST. 1998); *see Andersen v. Edwards*, 625 P.2d 282, 286 (Alaska 1981) (rejecting argument that holder of non-RS 2477 right of way easement had "an absolute right to clear [a] right-of-way within the 100-foot limit of the reservation").

[61]   RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.10 cmt. d, at 592, 594-95 (AM. L. INST. 1998).

[62]   *See id.*; *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 746 (10th Cir. 2005) (noting that RS 2477 right of way was not required "to be maintained in precisely the same condition . . .; rather, it could be improved 'as necessary to meet the exigencies of increased travel,' so long as this was done 'in the light of traditional uses to which the right-of-way was put' as of repeal of the statute" (quoting *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir. 1988))); *see Wayson v. Stevenson*, ___ P.3d ___, Op. No. 7614 at 11-13, 20-22, 2022 WL 3331495, at *13 (Alaska Aug. 12, 2022; Case No. S-17874) (stating that even if deed granting right of way use "without restriction" had been ambiguous, extrinsic evidence made clear that grantee intended to use easement commercially and subsequently balancing maintenance needs for commercial use of road with harms to servient estate owner).

[63]   *Wayson*, ___ P.3d ___, Op. No. 7614 at 20-22 (alteration in original) ("The manner, frequency, and intensity of [easement] use may change over time to take advantage of developments in technology and to accommodate normal development of the dominant estate or enterprise benefitted by the servitude.").

Fact finding is necessary to determine which of the State's proposed projects along Klutina Lake Road are reasonably necessary for and within the scope of a highway, as the term was used in 1969. This requires the superior court, within its discretion, to balance the interests of the servient and dominant estates.[64] In light of the length, condition, and purpose of the RS 2477 right of way, some of the State's proposed projects may more reasonably relate to those factors than others. Projects such as occasional pull-outs for travelers to rest or a restroom facility may better fit within the scope of a 1969 highway than removing vegetation to provide river views or potential fishing sites. A boat ramp at the end of the road, like the dock in *Dillingham*, may be more reasonable than a series of ramps with associated parking lots along the length of the road. In short, the State must demonstrate that its proposed projects relate to facilitating highway transportation, i.e, that the projects are reasonably necessary for highway purposes as defined in 1969, not simply that the projects would be nice facilities along the highway. And the superior court must use its discretion to determine whether the State's proposed projects would unreasonably interfere with Ahtna's reasonable use of the land. Because the State has not had an opportunity to present its proposed projects to the court and litigate Ahtna's opposition to those proposed projects, a remand for further proceedings on this aspect of the dispute is required.

## V.  CONCLUSION

The superior court's grant of partial summary judgment regarding aboriginal title is AFFIRMED. But its grant of partial summary judgment establishing

---

[64]  *See id.* at 3-4, 20-22 (reaffirming that superior court's balancing is reviewed for abuse of discretion and discussing balancing test: "[T]he interests of the parties must be balanced to strike a reasonable accommodation that maximizes overall utility to the extent consistent with effectuating the purpose of the easement." (quoting *Sykes v. Lawless*, 474 P.3d 636, 645 (Alaska 2020))).

that as a matter of law the scope of the RS 2477 right of way use is limited to ingress and egress is VACATED and REMANDED for further proceedings consistent with our decision.